Hulda Ley, Appellee, v. The Metropolitan Life Insurance Company of New York, Appellant.

Insurance: FRAUD: INSTRUCTION. Where the defense to a suit on an insurance policy is fraud, an instruction "that if the facts upon which the fraud is charged are or may be consistent with honesty and purity of purpose then the charge o' fraud will fail" is not objectionable as confusing, or as doubtful whether the words "facts charged" refer to the facts as alleged or the evidence.

Same. In an action on a policy of insurance where fraud is pleaded in defense, an instruction that "to show fraud the facts must lead naturally and clearly to the facts sought to be established, and must be inconsistent with any other reasonable or probable theory" is not erroneous, where the court in the same paragraph states that only a fair preponderance of the evidence is required to establish the defense.

Fraud: SUFFICIENCY OF PROOF. To avoid a policy of insurance on the ground of fraudulent representations by assured, it is not only necessary to show fraud, but that the company was deceived thereby, and relying upon the truth of the representations issued the policy, and the proof must be clear.

Fraud: SUFFICIENCY OF PROOF: INSTRUCTION.   In an action on an insurance policy where the company pleads fraud in defense, it is not only required to prove the making of the false representations, but also that they were known to the assured to be false, and an instruction stating this rule is correct.

Evidence: EXCLUSION OF.   Error in exclusion of evidence is cured by the subsequent admission of same; and a party cannot complain of the exclusion of evidence which his own objection has assisted in keeping out of the record.

Evidence: GOOD FAITH OF ASSURED.   In an action on an insurance policy, where the company pleads fraudulent representations of the assured in procuring the same, which, if known to the applicant to be false would avoid the policy, the evidence is considered and held sufficient to warrant the conclusion that assured acted in good faith in making the representations.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

SATURDAY, APRIL 11, 1903.

ACTION at law upon a policy of insurance issued by defendant upon the life of plaintiff's husband.   There was a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Stutsman & Stutsman* for appellant.

*Power & Power* for appellee.

WEAVER, J.—The policy in suit was issued May 29, 1900, upon the life of William Ley, who died August 19, 1900.   The defendant refuses payment, alleging that the said insured, in applying for such insurance, and in order to obtain a favorable report or certificate from the medical examiner, falsely and fraudulently misrepresented his physical condition and history; that in the year 1896 said Ley was afflicted with a very severe and almost fatal hemorrhage of the stomach (a disease which afterward caused his death), and that, in his examination by and answers to the examiner, he concealed and denied the fact of such

sickness, and that by such fraud and deception, in which it is alleged the plaintiff participated, said examiner was induced to certify the fitness of said Ley for insurance; and that such certificate would not have been made, nor would the policy have been issued, had such fraud not been practiced.

It was shown upon the trial that in applying for insurance the applicant signed written answers to questions propounded by the medical examiner bearing upon his physical condition at and prior to that date. Among such questions and answers were the following: "(1) Have you ever had spitting of blood? Ans. No. (2) Give full particulars of any illness you may have had since childhood, and name of medical attendants. Ans. Malaria, 8 years ago. Hawthorn Thornton, Portland, Oregon." "(6) Name and residence of your usual medical attendant. Ans. Have none. (7) Have you consulted any other physician? If so, when and for what? Ans. No." Although defendant took issue upon other answers made to the examiner, those above quoted are all which are material to the consideration of the matters presented in argument. The application, as distinct from the medical examination, is signed by both husband and wife, and, in addition to the usual assertion of the truth of all representations made and answers given, contains the following clause: "And it is expressly consented and stipulated that in any suit on the policy herein applied for, any physician who has attended, or may hereafter attend the insured, may disclose any information acquired by him in any wise affecting the declarations and warranties herein made."

Upon the trial the defendant conceded the issuance of the policy and the death of Ley, and assumed the burden of proof upon its allegations of fraud. In support of this issue, Dr. Stutsman was produced, and testified that he made the medical examination of Ley, and, while he had no independent recollection of many of the answers, was

able to testify that he recorded the answers as they were given by the applicant, and that, if Mr. Ley had disclosed the fact of having been afflicted with hemorrhage a few years before that date, he would have declined to certify him for insurance. On cross-examination the witness stated that he gave Mr. Ley a physical examination, sounded the lungs, listened to the heart action, tested the urine, and found no defects which would render him uninsurable. He appeared to be fairly well proportioned, and had an average appearance of a healthy man.

Dr. Little, a practicing physician, testified that he was called to attend Mr. Ley in 1896. The witness was then asked, "What was Mr. Ley suffering from, doctor?" To this plaintiff objected that the matter called for was confidential, and therefore inadmissible, under the statute; and the objection to this and certain other similar questions was sustained. It appears, however, that the witness, in answer to other questions, was permitted to testify, over plaintiff's objection, that Ley was vomiting black, clotted blood on the occasion referred to, and was quite weak and exhausted. He further testified that he attended Ley in his last sickness, and found him suffering from very profuse hemorrhage of the stomach. Plaintiff, in her own behalf, testified that upon the occasion of Dr. Little's visit in 1896 she caused him to be called in; that her husband had been taken ill while at his place of business, and walked home; that he vomited some, "but not so very much," and that there was no return of the vomiting after the doctor arrived; that the doctor was there only about ten minutes, and was in again once or twice only for a very brief call; that she was present on both occasions, and that the doctor said nothing to her husband as to the nature of the disease; that Mr. Ley returned to his work in two or three weeks, and thereafter was apparently in good condition, had good appetite, and seemed to increase in weight.

William Reese, who was Ley's business partner, testi-fied that he was present in the room when the medical examination of Ley was made for the purpose of procuring this insurance, and heard more or less of the questions and answers, and that, in answer to the inquiry as to former sickness and treatment by physicians, Ley mentioned to the examiner the name of a physician in Oregan, and also said that Dr. Little had treated him.   The foregoing is the sub-stance of the testimony in the record, except that of certain expert witnesses, which need not be set out at this time.

Much of the appellant's argument is devoted to ex-ceptions taken to the charge of the court to the jury.   The length of the charge, and the number of the criticisms made thereon, are such that it is impracticable to set them out at length without unduly extending this opinion, and we shall therefore state them in substance only.

I.   The rules given by the court in respect to evidence on which charges of fraud may be sustained are said by counsel to cast upon the appellant a heavier burden than

1. Fraud: in-
instruction.

the law contemplates.   In support of this contention we are pointed to the following language extracted from the third instruction:

"Fraud will never be presumed, but must be proven by the party charging it; and if the facts upon which it is charged are, or may be, consistent with honesty and purity of intention, then the charge of fraud will fail.   To show fraud, the facts must lead naturally and clearly to the facts sought to be established, and must be inconsistent with any other reasonable or probable theory."

The general proposition as to the presumption of good faith is conceded to be correct, but it is said, first, that the meaning of the first sentence is confusing, and leaves it doubtful whether the expression "facts upon which it is charged" has reference simply to the allegation of fraud in the pleading, or to the proof offered in support of such allegation; and, second, that the word "clearly," in the

next sentence, and the requirement that facts to prove fraud "must be inconsistent with any other reasonable or probable theory," call for a higher degree of proof than should have been exacted. The first sentence, in substance, is copied from an instruction approved by us in *Kenosha Stove Co. v. Shedd*, 82 Iowa, 540. We think it is not open to the objection made. No ordinary reader or juror would be apt to construe it otherwise than a statement of the general principle, often announced, that the presumption of good faith in human transactions is not overcome by proof of facts and circumstances which are consistent with honesty and integrity of purpose. *Hamilton v. Bishop*, 22 Iowa, 211; *Schofield v. Blind*, 33 Iowa, 175; *Pritchard v. Hopkins*, 52 Iowa, 120; *Lyman v. Cessford*, 15 Iowa, 232.

The second sentence quoted from the instruction is neither more nor less than a restatement in another form of the principle embodied in the first, and, as used by the court, we think the proposition is not erroneous. It is possible that the word "clearly," in that connection, if considered without reference to the charge as a whole, might be thought objectionable, as requiring proof beyond a doubt; and, if such were the effect here, the appellant's point would be well made. Such, however, would be an extreme and unfair interpretation of the court's meaning. The court was not instructing as to quantum of proof necessary to establish the defense pleaded, for that undoubtedly required only a fair preponderance of the evidence; and this, in express words, was so stated in another part of the same paragraph. But the alleged false statement in the application and examination of the insured person is not, strictly speaking, the defense offered, but is rather one of the facts which must be shown in support of the defense. To avoid the policy, it was necessary not only to show the fraud alleged, but that defendant was thereby deceived, and, in reliance

2. SAME.

upon the truth of the representations, issued the policy

3. FRAUD: sufficiency of proof. which it seeks to avoid. To establish such evidentiary fact of bad faith, falsehood, or deception, it is held in a multitude of cases that the proof must be "clear," "satisfactory," "convincing." *Scoffield v. Blind*, 33 Iowa, 175; *Prichard v. Hopkins*, 52 Iowa, 120; *Dirkson v. Knox*, 71 Iowa, 728; *Kellog v. Aherin*, 48 Iowa, 299; *N. Y. Ins. Co. v. Davis*, 96 Va. 737 (32 S. E. Rep. 475, 44 L. R. A. 305); *Paxton v. Boyce*, 1 Tex. 317; *Rabbit v. Dollen*, 14 Nev. 19; *McCarthy v. White*, 21 Cal. 495 (82 Am. Dec. 754); *Herring v. Wickham*, 29 Grat. 628 (26 Am. Rep. 405); *White v. Trotter*, 53 Am. Dec. 112; *Buck v. Sherman*, 2 Doug. 176; *Lavassar v. Washburne*, 50 Wis. 200 (6 N. W. Rep. 516); *Raymond v. Cox*, 44 N. J. Eq. 415 (15 Atl. Rep. 593). See, also, the rule stated and authorities cited in 14 Am. & Eng. Ency. Law (2d Ed.) 190. The distinction we have noted between the rule as to preponderance of evidence upon the ultimate issue and the rule as to the sufficiency of testimony to establish the fact of fraud has already been recognized by us in *Bixby v. Carskaddon*, 55 Iowa, 555. It is in the sense approved by the foregoing authorities that the district court must be understood in the paragraph under consideration, and the assignment of error thereon cannot be sustained.

II. Exception is also taken to paragraph six of the charge, in which the jury were instructed that:

"If it is shown by the fair preponderance of the evidence that, in his answer to any one or more of the interrogatories which are charged by the defendant as having

4. FRAUD: sufficiency of proof: instruction. been untruthfully answered, the applicant, William Ley, answered them, knowing at the time that the answer so given by him was false and untrue, or if he in making such answers, or any one of them, knowingly concealed any fact which he was in good faith at the time required to state, then the plain-

tiff cannot recover." It is said that this, in effect, requires the company not only to show that the answers of the applicant were untrue, but also to show that he knew them to be untrue, when, according to the correct rule, a good defense would be made by simply proving that the answers were false. What we might hold the law to be on this question if the issue here presented involved merely the truthfulness of answers or representations by the applicant in the nature of "warranties," we need not consider, and it is to such representations that the authority cited by appellant relates. *Sweeney v. Ins. Co.*, 19 R. I. 171 (36 Atl. Rep. 9, 38 L. R. A. 297, 61 Am. St. Rep. 751). We have in this state a statute which provides that the issuance of a certificate of health by the medical examiner estops the company from alleging or proving that the insured person was not in the condition of health required by the policy at the time the insurance was effected, unless the same was procured by or through the fraud or deceit of the assured. Code, section 1812. This serves to exclude the technical defenses which were formerly available, based on the doctrine of warranties as to the health and history of the insured person. To escape liability because of the uninsurable condition of the applicant's health or medical history, the insurer is required to show that the policy or health certificate was procured by fraud. It is a rule too well understood to require citation of authorities that the party alleging fraud must prove it. Now fraud has a well-defined meaning in law. For the purposes of this case, it may be said to be "a false representation of fact, with knowledge of its falsity, and with intent that it be acted upon, when the person to whom it is made acts upon it, and by so doing suffers an injury." 14 Am. & Eng. Ency. Law (2d Ed.) 21; *Watson v. Poulson*, 7 Eng. Law & Eq. 588; *Byard v. Holmes*, 34 N. J. Law, 296; *Avery v. Chapman*, 62 Iowa, 144; *Allison v. Jack*, 76 Iowa, 205. In *Brackett v. Griswold*, 112 N. Y. 467 (20 N. E. Rep. 376),

the definition is compressed into these words: "Representation, falsity, scienter, deception, injury." It follows, therefore, that proof of the falsity of the representation is proof of but one of several elements, each of which is essential to constitute fraud, and the burden is not removed from the party asserting it, until all are established by the evidence. If it be said that a representation may be made under such circumstances that, if false, we may safely conclude that its falsity was known to the party making it, the point can be conceded without affecting the rule as to the burden of proof. To establish its defense, it was incumbent on the defendant to prove not simply that the answers of the applicant were untrue, but that he knew them to be untrue, and thereby obtained the insurance. It is argued that, if the answers are found to be untrue, there is a presumption that the applicant knew it and intended to deceive. This, we think, is not the law. On the contrary, the law raises no presumption of knowledge on the part of the party making the representation from the mere fact that the representation is untrue. See note to *Cottrill v. Krum*, 18 Am. St. Rep. 560. The extent of the rule, so far as applicable to this case, is well stated in *Hammat v. Emerson*, 27 Me. 598 (46 Am. Dec. 602), cited by appellant, as follows: "When one has made a false representation, knowing it to be false, the law infers that he did so to deceive." In other words, there is no presumption of an intention to deceive from the mere fact that a statement made is not true; such presumption arising only when it appears that the statement is made with knowledge of its falsity. The giving of the sixth instruction was therefore not erroneous.

Objections are urged to other instructions on different grounds, the most material of which are governed by the conclusions already stated, or involve propositions of no general interest to the profession. We have examined each point made with the care which the importance of

the case merits, and find the law as stated by the district court to be in substantial accord with our prior holding, and such as was applicable to the issues and the evidence given on the trial.

III. Error is assigned upon the ruling of the trial court in sustaining the objections made to the testimony of Dr. Little concerning his treatment of Mr. Ley in 1896. It will probably not be disputed that the testimony called for was privileged under the provisions of our statute (Code, section 4608); but it is said that by reason of the "waiver" contained in the application, and hereinbefore quoted, this prohibition does not apply. The question which is here sought to be raised is one of considerable importance, but the record before us does not seem to make necessary decision thereof at this time. While it is true that plaintiff's objection to the testimony of Dr. Little was at first sustained, the witness did later testify as to the professional visits made by him in the year 1896, and stated quite fully what he claimed to have discovered concerning the physical condition of Mr. Ley at that time, and as to the nature of the illness from which said insured was then suffering. Moreover, it further appears from the record that when plaintiff interrogated this same witness as to what occurred upon his visit to Ley in 1896, and especially as to what he (the physician) told Ley concerning the nature of his ailment, such testimony was excluded upon the appellant's objection. If there was any error in the first ruling, which we do not decide, it was cured by the testimony afterward admitted; and, in any event, appellant cannot complain of the exclusion of evidence which its own objection has assisted in keeping out of the record.

5, **Evidence:** exclusion of.

IV. Appellant further insists that the verdict and special findings returned by the jury have no sufficient support in the evidence. Without taking the time or space to analyze the testimony,

6. **Evidence:** good faith of assured.

we have to say that, in our judgment, the record does not justify us in disturbing the result below upon this ground. Unquestionably, there is evidence tending to show that in 1896 Mr. Ley had hemorrhage of the stomach, and that if such fact had been stated upon his medical examination the policy would not have been issued. On the other hand, there was evidence from which the jury would believe that Mr. Ley did not know or understand the nature of the attack, and that in making this answers to the questions put to him by the examiner he acted in good faith. It was not for the plaintiff to prove good faith in order to recover, for, in the absence of proof to the contrary, good faith is presumed; but it was for the defendant, in order to defeat recovery, to prove the alleged bad faith. The question whether the presumption in plaintiff's favor had been overcome, and the affirmative defense established, could not be arbitrarily disposed of by the court, but was properly left to the jury; and we cannot say that its verdict is so clearly the product of prejudice or passion that we should order a new trial.

We find no reversible error in the record, and the judgment of the district court is AFFIRMED.