(164 App. Div. 34)

### THORNER v. JOHN HANCOCK MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department.    October 2, 1914.)

INSURANCE (§ 291*)—LIFE INSURANCE—REVIVOR OF POLICIES—EFFECT.

Where insured, after default, attempted to reinstate his policy under a provision authorizing reinstatement upon production of evidence of insurability satisfactory to the insurer and payment of arrears of premiums, falsely informing the insurer that he was in good health and for a year previous had suffered from no injury or ailment and had not consulted a physician, when in fact he had consulted physicians several times before his application for reinstatement, and was then suffering from a disorder afterwards found to be cancer of the stomach, which resulted in his death in six months after reinstatement, no recovery by the beneficiary can be had.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 681–690, 694–696; Dec. Dig. § 291.*]

Appeal from Trial Term, Kings County.

Action by Lena Thorner against the John Hancock Mutual Life Insurance Company. From a judgment for plaintiff and an order denying new trial, defendant appeals. Reversed.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

Benjamin Reass, of Brooklyn (Hugh Hirsh and Emanuel Newman, both of Brooklyn, on the brief), for appellant.

Henry M. Dater, of Brooklyn (Jay S. Jones and Bernard J. Becker, both of Brooklyn, on the brief), for respondent.

BURR, J. There is substantially no dispute of act in this case. The question is one of law. We think that defendant's motion to direct a verdict in its favor, made at the close of the entire case, should have been granted.

On October 18, 1910, Jacob Thorner procured from defendant a policy insuring his life in favor of plaintiff, who is his widow. By its terms a premium of $80.52, less insured's distributive amount of surplus, amounting to $8.10, became due October 18, 1911. This premium was not paid. On September 28, 1911, in compliance with the statute relative thereto, a notice was sent to him advising him when such premium would become due. By the terms of the policy, "a grace of thirty-one days, during which the policy shall remain in force, will be granted for the payment of premiums or regular installments thereof, *after* the first year." Defendant apparently conceded that this provision was applicable to the premium falling due on October 18, 1911, for on November 11th it sent to him a notice reminding him that on November 18th of the same year the grace period would expire. Still the premium remained unpaid. Included in the contract of insurance was this further provision:

"At any time within five years from default in payment of premium, * * * this policy may be reinstated, upon production of evidence of insurability satisfactory to the company and approved at its home office and upon payment or reinstatement of any indebtedness to the company hereon or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

secured hereby, and payment of arrears of premiums, with interest at the rate of five per centum per annum."

Within the specified period, and on December 8, 1911, the insured ·sought to have the policy reinstated. He furnished to defendant evidence, at that time satisfactory and approved, of his insurability, and complied with the .other conditions of the reinstatement contract. On June 20, 1912, he died. The immediate cause of death, as appeared from the proof thereof and the evidence in the case, was "carcinoma (cancer) of the stomach." The evidence furnished by insured to defendant, upon which the policy was reinstated, consisted of a certificate signed by him to this effect:

"I certify that I am now in good health; that within one year prior to the date of this certificate I have had no injury, ailment, illness or disease, nor symptoms of such. NEITHER HAVE I CONSULTED A PHYSICIAN."

The words here capitalized were printed upon said certificate in red ink and in capital letters. The remainder of the certificate was printed with ordinary type and in black ink. Concededly at least so much of the statement as referred to his consulting a physician and to having had "symptoms of ailments" was false, and, when made, was known to him to be so. Among the proofs of death submitted by plaintiff was an affidavit made by Dr. Jacob Fuhs, a specialist in diseases of the digestive system. From this it appears that insured did consult him on September 16, 1911, October 12, 1911, November 2, 1911, December 7, 1911 (the day before the date of his certificate), and on January 11, 1912. It also appears that on June 6 and June 9, 1912, 2 weeks and 11 days, respectively, before his death, .he saw insured in consultation with Dr. F. Ignatius Drobinski, his attending physician. In response to a question contained in said affidavit, "Did you ever prescribe for or attend deceased for any disease, ailment, or injury?" Dr. Fuhs replied, "Only for his last illness." In response to the question, "When did health first begin to be impaired?" he replied, "A year before his first call." It also appears that on September 19 and 20, 1911, Dr. Fuhs sent insured to Dr. Charles Eastmond, a specialist in "X-ray diagnosis"; that he took an X-ray photograph of insured and reported the result to Dr. Fuhs. It also appears that in January, 1912 (between January 17th and January 24th), insured submitted to an operation at the Post Graduate Hospital in the city of New York, and his disease was there diagnosed as cancer of the stomach. From that time until the date of his death he was constantly under the care of physicians for treatment for this disease, of which he died.

The question for us is: Was this certificate of December 8, 1911, upon which deceased obtained reinstatement of the contract of insurance with defendant, and which is concededly false, also fraudulent; that is, was it false to the knowledge of insured and made with intent to deceive? The evidence permits of but one answer. The inferences to be drawn therefrom allow but one conclusion. There is no other possible explanation thereof, except that insured intentionally sought to mislead defendant, disarm suspicion, and, if possible, procure a reinstatement of a policy, when, if all of the facts known to him had been disclosed to defendant, it well might have declined to restore. A little

more than a year before, after an examination by its own physicians, the life of insured had been accepted as a satisfactory risk. The subject upon which it sought information before reinstating this lapsed policy was what had occurred in the meantime. Under its contract, if it desired, it could require another medical examination by its own physicians before reinstating the same. Two of the facts which insured was asked to certify to were: First, whether within the past year he had any injury, ailment, illness, or disease, or *symptoms of such;* and, second, *whether he had consulted any physician.* The course of conduct of defendant with regard to further medical examination would undoubtedly be governed by the answers given thereto. Each of his statements respecting these vital facts was knowingly false. Conceding that he then did not know the nature of the disease from which he was suffering and from which he subsequently died, conceding even that at that time he did not know positively that he had any disease at all, he certainly did know that he had sufficient "symptoms" of an "ailment" to induce him to consult a specialist in diseases of the digestive organs, and that under his advice he had been subjected to the X-ray treatment. He did know that he had consulted a physician. Suppose it were the fact, although the indications are entirely to the contrary, that he had then been advised by Dr. Fuhs that he was suffering from no disease, illness, or ailment whatever, defendant was entitled to know all of the facts respecting his conduct, that it might govern its conduct accordingly. The materiality of a representation is largely measured by the known consequences thereof. It is impossible to attribute to the insured but a single purpose in falsely stating to defendant that he had no "symptoms of ailment" and had not "consulted a physician." It was to avoid, if possible, further examinations by defendant's physicians, the consequences of which he might well dread. It is unfortunate that insured suffered his first annual premium to lapse, but defendant owes a duty to its other policy holders to see to it that its treasury is not depleted by the payment of fraudulent claims. In defending this action, it is but discharging that duty.

As the facts cannot be altered upon a new trial, within the power now conferred upon us, we reverse the judgment and order appealed from, and direct judgment in favor of defendant, dismissing the complaint, with costs of the action and of this appeal. All concur.