[No. 13368. Department Two. June 16, 1916.]

ELIZABETH QUINN, *Respondent*, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Appellant*.[1]

INSURANCE—AVOIDANCE OF POLICY FOR MISREPRESENTATION. A legal presumption of implied deceit arises, within 3 Rem. & Bal. Code, § 6059-34, providing that no misrepresentation or warranty made in the negotiation of a contract or policy of insurance shall be deemed material or defeat the policy, unless it is made "with intent to deceive," where an applicant for a life insurance policy, as an inducement to its issuance, stated in his application that he had had no disease since childhood, that he was in good health, and had not consulted a physician in the last five years, when in fact he was suffering from syphilis, and had received medical treatment therefor from a physician less than a month prior to the date of his application for a policy.

INSURANCE — ESTOPPEL TO AVOID POLICY — KNOWLEDGE OF AGENT. Where, previous to taking out a policy of life insurance, the applicant told the authorized agent of the insurance company that he was afflicted with some ailment, for which he had been treated by a doctor, but the nature of which was not disclosed, to which the agent replied that the applicant did not appear to have anything the matter with him, the agent was without such knowledge of the exact nature or condition of the applicant's health as was sufficient to impute knowledge to the company, estopping it from questioning the validity of the policy.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered December 13, 1915, upon findings in favor of the plaintiff, in an action upon a life insurance policy, tried to the court. Reversed.

[1] Reported in 158 Pac. 82.

*Hughes, McMicken, Dovell & Ramsey,* for appellant.

*H. E. Donohoe* and *C. D. Cunningham,* for respondent.

HOLCOMB, J.—Respondent, the mother of the insured and the beneficiary named in a life insurance policy for $1,000 upon the life of Joseph L. Quinn, issued by appellant on April 19, 1914, recovered thereon in the court below. The death of the insured occurred on May 23, 1914. Due proof of loss was made by respondent, demand made for payment, and payment refused. The material issues to be decided upon this appeal arise upon the affirmative defense pleaded by appellant, which sets out the application made by the insured for the policy, the issuance of the policy, and the incorporating and making of the application therefor a part of the policy, a copy of which policy and the application therefor is attached to the affirmative answer.

The application begins as follows:

"This application is made to the Mutual Life Insurance Company of New York. All the following statements and answers, and all those that I make to the company's medical examiner, in continuation of this application, are true, and are offered to the company as an inducement to issue the proposed policy. I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired."

Statements to medical examiner embraced the following questions and answers:

"17.   What illnesses, diseases, injuries or surgical operations have you had since childhood?  Ans.  None.

"18.   State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years.  Ans.  None.

"19.   Have you stated in answer to question 17 all illnesses, diseases, injuries or surgical operations which you have had since childhood?  Ans.  Yes.

"20. Have you stated in answer to question 18 every physician and practitioner consulted during the past five years and dates of consultations? Ans. Yes.

"21. (a) Are you in good health? Ans. Yes.

"(b) If not, what is the impairment? Ans. None."

Following the questions and answers is this certificate:

"I certify that each and all of the foregoing statements and answers were read by me and are fully and correctly recorded by the medical examiner.          Joseph L. Quinn.

"Signature in full of person examined."

The affirmative defense sets out the foregoing facts, quoting the questions and answers above, and alleging that each and all of same are wholly false and were known at the time by the applicant to be false, in that the applicant was at that time afflicted with the disease of syphilis, and in that the applicant had shortly prior thereto consulted with Dr. A. J. McIntyre and had been treated by him for that disease. It is admitted by the reply of respondent that, at the time of making his application, the applicant was suffering with a venereal disease, and averred that the defendant had full knowledge thereof. The case was tried to the court without a jury, who made findings of fact in favor of respondent. We, therefore, try the case *de novo*, and must affirm the findings of the court unless the evidence preponderates against the same.

It appears from the evidence that one R. W. Edgington was the duly authorized agent of the appellant and on several occasions solicited the applicant to take out a policy of life insurance; that, previous to the taking out of this policy, the applicant had told the agent that he was afflicted with some ailment the nature of which was not disclosed to the agent, and had been treated therefor by a doctor in Hoquiam; that the agent replied that the applicant did not appear to him to have anything the matter with him; that he, the agent, would see the company's medical examiner in Hoquiam, Dr. Watkins, and that a few days thereafter the

agent returned and said that he had seen Dr. Watkins and that it would be all right. The applicant thereupon made application for the policy on April 15, 1914, and on April 19, 1914, was examined by the appellant's medical examiner, Dr. Watkins, and the foregoing answers were signed.

The testimony of the medical examiner was that Edgington, the agent, had told him nothing whatever concerning the applicant or concerning any disease that the applicant may have been suffering with; that the answers made by the applicant were truly and correctly recorded in the written report of examination made by Dr. Watkins, and that he relied upon them and upon no other information whatever. This testimony of the medical examiner was undisputed. The court found that,

"If the answers of Joseph L. Quinn reported to have been made to Dr. Watkins as aforesaid were actually made by him, they were not made with the intention of defrauding, deceiving, or misleading Dr. Watkins or the defendant company."

The court further found that, previous to the time that Quinn was examined by Dr. Watkins, he had been treated by one Dr. McIntyre who had prescribed for him a treatment of neo salvarsan, on March 16, 1914, and another administration of the same drug on March 18, 1914, and that Dr. McIntyre was of the opinion that Quinn was suffering with syphilis and that he treated him for that disease at the times mentioned. It appears, also, from the testimony of appellant's medical referee and its manager for the territory where this policy was issued, that, had the appellant answered truthfully the questions propounded to him and had the medical report shown that he had suffered with the disease of syphilis within two months prior to the application, he would not have been accepted as an insurance risk and the policy would not have been issued.

There is a statutory provision in the insurance code of 1911, Laws 1911, p. 197, § 34, as follows:

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive." 3 Rem. & Bal. Code, § 6059-34.

In view of this statute, the only fact to be determined is whether or not the representations made by the applicant were made, as the court found, without intent to deceive.

When one has made a false representation, knowing it to be false, the law infers that he did so with the intention to deceive. *Hammat v. Emerson*, 27 Me. 308, 46 Am. Dec. 598; *Northwestern Life Ins. Co. v. Montgomery*, 116 Ga. 799, 43 S. E. 79; *Boddy v. Henry*, 126 Iowa 31, 101 N. W. 447; *Thorner v. John Hancock Mut. Life Ins. Co.*, 164 App. Div. 34, 149 N. Y. Supp. 345. Respondent contends, however, that the knowledge of the agent must be imputed to the company, and relies especially upon the case of *Turner v. American Casualty Co.*, 69 Wash. 154, 124 Pac. 486. In that case we said:

"Passing to a consideration of the third contention, it suffices to say that this court has steadfastly held that a policy will not be held void, nor will a warranty clause in a policy be held to have been breached, for a cause known to the agent before the application for the policy was signed, where the insured fully and truthfully related the facts to the solicitor, and false answers were written in the application by him [the agent]. . . . The underlying principle of these cases is that the knowledge of the agent is the knowledge of the principal, without regard to whether the agent communicates the facts to it; that where the insured makes full and truthful statements to the agent who procures the policy of insurance, the insurer will be held to have waived the written warranties in so far as they are not in harmony with the facts disclosed, and that this court will determine the authority of the agent from the actual relations of the parties, rather than from the fictitious relations sought to be created by the recitals in the written instruments."

As we view it, however, that case is not applicable for the reason that here the insured did not "fully and truthfully" relate the facts to the solicitor and false answers were not written in the application by the agent. The only evidence there is as to what representations were made by the applicant to the agent is the testimony of an associate of the applicant, as follows:

(Witness Brinn): "Mr. Edgington came to camp several days trying to get us to take out policies. I did not care to take it out and so Joe was not particular. He asked Joe to take it out and Joe told him he did not care to take out a policy because, he put it in this way, he says, 'I have got all the policies I can tend to,' speaking in a joshing way. He says, 'Why, there is nothing wrong with you, is there, Joe?' I spoke up, I says, 'Joe got touched up a little bit.' Then Mr. Edgington asked what was wrong. I said Joe was doctoring in Hoquiam taking treatments for a disease, I did not mention what it was because I did not know. And Mr. Edgington says to Joe, 'You do not look like a sick man to me, better take one out anyway.' And it run on for several days, about a week or so, and finally Mr. Edgington says, 'I shall go down for a talk with Mr. Watkins about this, and he went away for two or three days and came back and says, 'Joe, I think that will be all right. I have been talking with Watkins about it,' Mr. Edgington says to Joe. And Joe then didn't want to take out a policy. And finally Edgington talked to me on writing a policy. I says, 'Joe, we might as well take this, it will be a thousand dollars at the end of twenty years that you wouldn't have otherwise. . . . So he, Joe, says, 'Well, I shall take the policy,' and Mr. Edgington written it out for him. I guess that is all."

This certainly fails to show that the applicant or any one speaking for him had in any way fully and truthfully brought to the soliciting agent of the company knowledge of the concealed facts, brought out afterward, that he was at the time afflicted with syphilis and was taking treatment for it, which he concealed from the soliciting agent as well as from the examining physician.

These facts, with the legal presumption of implied deceit from the falsity of material and inducing representations, clearly overbalanced the finding of his Honor that the assured "had no intent to deceive." These untruthful representations were material, being made as stated in the application "as an inducement to issue the proposed policy." Nor can it be justly said, as counsel for respondent urge, that Quinn may have considered himself cured of syphilis, for it is undisputed that had he disclosed the fact of the existence of that disease within two months previous to his application and treatment therefor, insurance would have been refused him. From the facts that he died only a little more than a month after his application and that his death was due, in the opinion of physicians, either to the disease or to the neo salvarsan treatment, it cannot be doubted that he himself must have known of the seriousness of the disease and that he was probably not cured.

These facts also distinguish this case from the former case from this court, *Turner v. American Casualty Co.*, cited by respondent, and from *Levie v. Metropolitan Life Ins. Co.*, 163 Mass. 117, 39 N. E. 792, and other similar cases. In the *Levie* case, the court say:

"Nevertheless our statute provision . . . precludes the defendant from prevailing, unless it is established not only that the statements or answers were incorrect, but also either that the misrepresentations were made with actual intent to deceive, or that the matter misrepresented increased the risk of loss. . . . Whether the statements and answers of the application were incorrect, and whether, if they were incorrect, the misrepresentations were made with actual intent to deceive, . . . were all questions of fact, to be submitted, if there was a conflict of evidence, to the jury with proper instructions."

As will readily be seen in the present case, it cannot be doubted that the misrepresentations were knowingly made and were therefore impliedly deceitful. They were material and must have been made with intent to deceive. There was

no conflict in the evidence upon those questions, and therefore the case is not parallel to the case cited.

In *Johnson v. Northern Life Ins. Co.*, 123 Minn. 453, 144 N. W. 218, Ann. Cas. 1915 A. 458, also cited by respondent, the court say:

"As we construe the statute a material misrepresentation, made with intent to deceive and defraud, avoids the policy. A material misrepresentation, not made with intent to deceive or defraud, does not avoid the policy. . . . Whether a misrepresentation is material, . . . and whether a misrepresentation is made with intent to deceive and defraud, are questions usually for the jury, with the burden of proof upon the insurer."

In *Ley v. Metropolitan Life Ins. Co.*, 120 Iowa 203, 94 N. W. 568, the supreme court of Iowa, having before it almost an identical statute and parallel misrepresentations, say:

"To establish its defense [fraud in procuring an insurance policy], it was incumbent on the defendant to prove not simply that the answers of the applicant were untrue, but that he knew them to be untrue, and thereby obtained the insurance. It is argued that, if the answers are found to be untrue, there is a presumption that the applicant knew it and intended to deceive. This, we think, is not the law. . . . there is no presumption of an intention to deceive from the mere fact that a statement made is not true; such presumption arising only when it appears that the statement is made with knowledge of its falsity."

Again, in this case it is apparent that the case cited is not parallel for the reason that, as we have heretofore said, the facts preponderate to the effect that the statements were untrue, that the applicant knew them to be untrue, and that the presumption is that he intended to deceive when making such untrue representations.

Respondent insists, also, that the judgment should be affirmed for the reason that appellant is estopped to question the validity of the policy from the fact that it was delivered

by the agent of the appellant to the insured at a time when the condition of the health of the insured was as shown by the appellant at the trial, citing *Northwest Life Ass'n v. Findley*, 29 Tex. Civ. App. 494, 68 S. W. 695. In that case the court say:

"It was about six weeks from the time the policy was delivered until the death of the insured. Appellant held the premium during that time, and knew, through its agent Barnes, the condition of the health of the insured, but did not repudiate his act in delivering the policy or take any steps to revoke or cancel the policy. The knowledge of Barnes concerning the health of the insured should be imputed to his principal, and its failure to act amounted to a ratification of the delivery."

Upon this point, also, we cannot agree with counsel for respondent for the reason that there is no showing in this case that appellant had any knowledge of the condition of the assured's health at the time the policy was delivered to him unless what is contended to be the knowledge of appellant's soliciting agent is imputed to it. But, as we have said before, the soliciting agent had no knowledge, so far as the evidence goes, of the exact nature or condition of the assured's health. Appellant manifestly could not repudiate the act of the agent when he had no knowledge from any statements of the insured of the existence of the disease previous to the time that the policy was delivered.

We are unable to escape the conclusion that the insured misrepresented the facts to the agent of the appellant and especially to the examining physician; that there was no collusion between the examining physician, agent, and insured; that the misrepresentations were material; that they were in fact warranties, and that they materially contributed to the loss.

The judgment is, therefore, reversed and the cause dismissed.

Morris, C. J., Parker, Bausman, and Main, JJ., concur.