[No. 24819. *En Banc.* July 6, 1934.]

W. W. McCANN, *Respondent*, v. V. H. REEDER *et al.*, *Defendants*, MERCER CASUALTY COMPANY, *Appellant.*[1]

[1]Reported in 34 P. (2d) 461.

*Shank, Belt & Rode,* for appellant.
*Pearson & Potts,* for respondent.

STEINERT, J.—This is a garnishment proceeding wherein respondent seeks to recover from appellant, the garnishee, payment of a judgment which respondent had previously recovered in the main action against defendants for damages arising out of an automobile collision. A hearing before the court, without a jury, resulted in findings and conclusions favorable to respondent, followed by a judgment against appellant in the full amount originally recovered against the defendants, with costs and interest. The garnishee has appealed from the judgment against it.

The facts are these: For some years prior to June 3, 1931, defendant Wm. Reeder had been in the trucking business. During a portion of that time, he had been a member of a partnership engaged in that business and operating under the name of Hamilton Auto Freight, which was later incorporated, and in which, when incorporated, Reeder held considerable stock. In February, 1930, he appears to have severed his connection with the corporation, and thereafter to have conducted the same character of business in his own name. An insurance broker by the name of Goodier had, from time to time, procured automobile insurance for the defendant Reeder and for the Hamilton Auto Freight.

On June 3, 1931, Goodier, acting for Reeder personally, procured from appellant an automobile vehicle insurance policy covering a Fageol truck. The following provisions appear on the first page of the policy:

"THE MERCER CASUALTY COMPANY . . .

"IN CONSIDERATION OF a premium of Seventy Nine and 60/100 DOLLARS and the statements set forth in the schedule of statements attached hereto and made a material part hereof, said statements being WARRANTED true by the ASSURED, as evidenced by the acceptance of this policy, DOES HEREBY INSURE, . . .

"SCHEDULE OF STATEMENTS

. . . . . . . . . .

"9. During the past three years Assured has had no accident as result of ownership or operation of any auto-vehicle and no Company has refused him insurance on any auto-vehicle, EXCEPT, no exceptions.

. . .

"11. Assured accepts this policy, (including any endorsements thereon or attached thereto) in its entirety as the contract between himself and said Company, and agrees to abide thereby."

The insurance was placed in the appellant company on the specific request of Reeder, because that company's rates were considerably less than those of other companies. In a conspicuous place on the sectional front of the policy were the words, "READ THIS POLICY."

The accident out of which the main action arose occurred June 13, 1931, ten days after the issuance of the policy. On the same day, but prior to the happening of the accident, Reeder received from the appellant a five-days'·notice of cancellation of the policy, in accordance with the provisions contained therein. Cancellation was ordered by the company because of the information which it had obtained as to Reeder's previous loss record.

Appellant denied liability under the policy, on the ground that the schedule of statements above mentioned constituted warranties, and were, in fact, untrue, in that, within three years prior to the issuance

of the policy, Reeder had had a number of accidents as the result of ownership or operation of an auto vehicle, and that an insurance company had cancelled a policy covering an automobile owned by him.

The evidence discloses that, between September 3, 1929, and November 9, 1930, there had been six accidents involving automobiles or trucks either owned, or else operated, by Reeder. Two of these accidents involved collisions with other cars, apparently resulting in minor injuries only. A third involved a collision between a street car and a truck owned by Hamilton Auto Freight, Inc., and driven by Reeder; the ensuing litigation resulted in a compromise under which the owner of the truck was paid five hundred dollars. A fourth accident involved the burning of a truck, for which fire loss was collected. A fifth occurred when a truck backed over an incline and was upset; as a result of the accident, Reeder made claim upon the insurance company, which was one other than the appellant herein. A sixth accident involved a collision with another car, and resulted in litigation which terminated in a verdict and judgment in favor of Reeder; the expense incident to the litigation, however, which the insurance company that held the coverage had to pay, was eight hundred dollars. The policy was thereafter cancelled by the insurance company for unsatisfactory loss record and accident frequency. In addition to these six specific accidents, Reeder admitted that there had been a number of others, all, however, of a minor nature, but for one of which, at least, damages were paid.

A blanket policy previously issued by another insurance company covered the equipment owned by Hamilton Auto Freight, Inc., and also trucks or automobiles owned by Reeder, and was, in form, made to protect

both. It was this policy under which the insurance company had been put to the expense of eight hundred dollars in defending litigation consequent upon the accident. All told, there had been fourteen accidents in which trucks or automobiles of either the company or of Reeder were involved. It further appears that at least two other policies held by Reeder had been cancelled by the insurance company which issued them. Goodier, who had had charge of the insurance of both Reeder and the Hamilton Auto Freight, Inc., well knew of these various accidents, and at one time had complained of their frequency to Reeder.

Relying upon the provisions of Rem. Rev. Stat., § 7078, which will be noticed later, Reeder contended upon the trial, and the court found:

"That no misrepresentations were made in the negotiation of said policy of insurance hereinbefore referred to, or in said policy, with the intent to deceive or defraud the garnishee defendant, nor were any misrepresentations made to the negotiation of said policy of insurance or in said policy in any manner material to the risk."

The construction of § 7078 in its application to the facts herein presents the vital question in this case. Preliminary to that, however, we will advert to two other features of the case that distinguish it from ordinary cases of this kind.

In the first place, as already observed, this action is not prosecuted by the assured Reeder to recover under the policy, but by one who seeks recovery against appellant through a garnishment proceeding. It is well settled that the rights of a garnishing creditor are no greater than those of the debtor, and, if the debtor may not recover, then the creditor may not. *Barkley v. Kerfoot,* 77 Wash. 556, 137 Pac. 1046; *Austin v. Wallace,* 117 Wash. 61, 200 Pac. 566; *Parks v.*

*Lepley,* 160 Wash. 287, 294 Pac. 1020. Hence, if Reeder may not recover, then the respondent may not.

In the next place, it is also to be observed that the insurance was procured through a broker. But under the statute and our decisions, such broker is the agent of the one for whom he procures the insurance. *Day v. St. Paul Fire & Marine Ins. Co.,* 111 Wash. 49, 189 Pac. 95; *Hayes v. Automobile Ins. Exch.,* 126 Wash. 487, 218 Pac. 252; *Lindstrom v. Employers' Indemnity Corp.,* 146 Wash. 484, 263 Pac. 953. So that any false warranty made in the policy is not alleviated by the fact that the policy was procured through another, if such other be the agent of the assured.

We now come to the main question. Rem. Rev. Stat., § 7078, in so far as it is material here, reads as follows:

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive."

Under our decisions construing this statute, the beneficiary's right to recover upon the policy is not defeated or avoided merely because the representations are false. It must also be found that they were made with intent to deceive. *Houston v. New York Life Ins. Co.,* 159 Wash. 162, 292 Pac. 445, and cases therein cited. The effect of the rule as prescribed by the statute is that the intent of the one making the misrepresentation or warranty is ordinarily a question of fact. If there be a conflict in the evidence touching that question, it is to be resolved by the trier of the fact; if, however, there be no conflict in the evidence, or if, from the evidence, only one conclusion can properly be reached, it must be determined as a matter of law.

132

Applying this rule to the present case, we are of the opinion that the evidence here presents no conflict, and that the question of intent is to be determined as a matter of law. Reeder himself directed that the particular insurance be placed with the appellant company. He patronized that company because its rates were cheaper. Both he and his agent were well aware of the numerous accidents in which trucks owned or operated by Reeder had been involved.

In a prominent place on the policy was a statement, which formed a part of the consideration for its issuance, warranting that the insured had had no accidents within the previous three years, all of which was untrue. When the policy was delivered to the agent, he made no correction of the misstatement. Upon the delivery of the policy to Reeder, he retained it without any repudiation of the false statement. The policy bore a warning on the front, "READ THIS POLICY." Neither Reeder nor his agent denied that they had read the policy nor did they deny that they were aware of the warranties therein made. The warranties were material to the risk assumed by the insurer. When the company learned the true situation, it gave Reeder prompt notice of cancellation of the policy.

In *Day v. St. Paul Fire & Marine Ins. Co.*, 111 Wash. 49, 189 Pac. 95, insurance covering an automobile was procured through a broker upon the representation by the owner that the automobile was a new 1911 model, when, in fact, it was a 1910 second-hand car. In reversing the judgment of the trial court, it was held by this court that although the intent accompanying false and fraudulent representations is a question of fact, yet, where insurance is issued in reliance upon the fraudulent statement, and would not have been procurable had the truth been told, proof of honest intent

is not established by a bare affirmation that the intent was honest. The proof of the making of false and fraudulent representations, it was said, raises a presumption of dishonest motive, which must be overcome by evidence establishing an honest motive.

In *Hayes v. Automobile Ins. Exch.,* 126 Wash. 487, 218 Pac. 252, the owner of an automobile sought insurance thereon by signing an application therefor in blank. According to his version, the agent, without the owner's knowledge, had filled in certain statements which were untrue. Those statements were to the effect that the automobile had not been in a wreck prior to the application, that no other company had cancelled or refused insurance on the automobile, and that there existed no unmentioned encumbrance on the automobile. The assured received the policy but did not read it. The policy contained provisions which were, in effect, the same as those in the present case. In holding that the plaintiff should have been nonsuited upon his evidence, this court said:

"Whether he read it [the policy] or not is immaterial. It was his duty to read it, and the law says that he did read it. It showed statements which he knew were untrue and without which he could not have obtained the insurance. It becomes immaterial whether or not originally in the application the blanks were filled in by the appellant's agent without the respondent's knowledge; in effect, they were the respondent's own statements when he received the policy containing the instruction 'Read your policy' and retained it. Those cases holding the company responsible for false statements written by its agent without the assured's knowledge do not go to the extent of relieving the assured when he has not acted in good faith, and good faith is negatived here by the respondent's failure to call attention to the falsities when they appeared in the body of the policy itself."

134

That case was subsequently reheard *En Banc,* and is again reported in 129 Wash. 202, 224 Pac. 594, where it was said:

"The result, therefore, is that the respondent is charged in law with having accepted and read a policy containing warranties which he knew at the time to be untrue, and that he is thereby estopped from asserting that, in the application, the answers which were afterwards embodied in the policy itself as warranties were written in by an agent of the company without his knowledge. The manner in which the application was made might relieve the respondent upon the theory that false statements contained in it were not made with intent to deceive, but that the policy itself was accepted by the respondent with knowledge of false warranties is another matter, for he is in law charged with knowing them and he cannot escape responsibility by saying merely that he did not read them.

"Whether the application was filled out by the insurance company's agent becomes immaterial, for the respondent knew that the statements made therein were not based upon any facts detailed by him, and when he accepted the policy and is charged with having read it, he then, in legal effect, made for the first time the false statements with knowledge of their falsity, and the fact that they appeared there as a result of the agent's failure to inquire the facts of him does not make them any the less his own misstatements."

In *Mutual Life Ins. Co. v. Campbell,* 170 Wash. 485, 16 P. (2d) 836, the assured had represented, in his signed application for a policy, that he had no impairment of vision in either eye. The evidence disclosed that he had a serious impairment of vision, and had been told by an eye specialist that he was going blind. Those facts were unknown to the insurance company when it issued the policy. In an action by the company to cancel the policy, the assured testified that he had not intended to deceive the company. We held that it profited him nothing to say that, by his representa-

tion, he did not intend to deceive; that a statement obviously factitious can not be accepted as being true on its face.

Our most recent expression upon the subject is contained in the case of *Perry v. Continental Insurance Co., ante* p. 24, 33 P. (2d) 661. In that case, the application for the policy contained a statement to the effect that the assured had never had a fire loss. The fact was that the assured had had a previous fire loss for which she had collected insurance in the sum of forty-five hundred dollars. In explanation of her false statement, the assured testified that she had told the company that she had never had a fire in Anacortes, where the property was located, but that she had suffered one in Grays Harbor county. She further testified that she did not read the application at the time that she signed it. The application was made a part of the policy. In the opinion, in which quotation was made from the *Day* and *Hayes* cases, *supra,* we said:

"The respondent accepted the policy one year prior to the destruction of the dwelling. She is charged with having read the policy and the application (which she knew, when she signed same, contained misstatements) attached thereto. She then knew—she is charged with knowledge—that the statement respecting previous loss by fire was false. The statement was a material representation as it was one that would influence a prudent insurer in determining whether to accept the risk. We hold that every fact which is untruly stated must be regarded as material within the statute [Rem. Rev. Stat., § 7078,] . . . if the insurer's knowledge or ignorance thereof would naturally influence the insurer's judgment in making the contract. The admittedly untrue statement over the respondent's signature was a representation that would influence the insurer's judgment in making the contract."

The only excuse given for Reeder's failure to disclose the facts is that some of his previous accidents

had been only minor in character, and that in none of them had recovery been obtained against him or against the truck company. The warranty made by him was not that he had had no accidents for which he was liable, but that he had had no accidents at all. The form of the statement contained in the policy was such as to call for a disclosure by him of the exceptions thereto if there were any such. The company had the right to know what the exceptions were, and to determine for itself whether, in view of their frequency, it cared to assume the risk attendant upon the issuance of a policy to Reeder.

It is not necessary for us to hold in cases of this kind that every trivial accident, regardless of consequence or circumstances, must nevertheless be reported, under penalty of having the policy avoided. It is sufficient to say here that the frequency of Reeder's accidents and the sum total of their gravity were such as called for a disclosure, and that the failure to make any disclosure whatever raised a conclusive presumption of an intent to deceive.

Respondent cites the following cases and contends that they are conclusive here: *Lindstrom v. Employers' Indemnity Corp.*, 146 Wash. 484, 263 Pac. 953; *Morgan v. Union Automobile Ins. Co.*, 150 Wash. 443, 273 Pac. 527; *Bowden v. General Insurance Co.*, 152 Wash. 199, 277 Pac. 443; *McKay v. General Accident, Fire, etc., Corp.*, 158 Wash. 207, 290 Pac. 820; *Houston v. New York Life Ins. Co.*, 159 Wash. 162, 292 Pac. 445, reported on rehearing in 166 Wash. 611, 8 P. (2d) 434; *Tison v. American National Ins. Co.*, 163 Wash. 522, 1 P. (2d) 859, 3 P. (2d) 998.

All of those cases either assert, or else imply, the rule that we have previously announced, that the question of intent is a question of fact to be determined by

the trier of the fact, unless the facts, together with such presumptions as necessarily follow them, of themselves conclusively establish such intent, or lack of it, as a matter of law. But in all of those cases there was an element which compelled the submission of the case as a question of fact and not one purely of law.

In the *Lindstrom* case, there was the question whether or not the insurer was actually deceived, dependent upon the disputed contention that the true status of the title to the property involved had been communicated to, and was known by, the insurer when it issued the policy. In the *Morgan* case, there was a question as to which of the parties was responsible for the error appearing in the policy. By the verdict of the jury it was established that the error in the statement was attributable to the fault of the agent of the company; hence, it could not be ascribed to an intent to deceive on the part of the assured. In the *Bowden* case, we have the same situation. The alleged false warranty was with reference to the year model of an automobile. In that case, the company's agent not only saw the car and was given an opportunity to examine it, but he himself then stated that he would inquire of the selling agency as to the year of its model. The *McKay* case does not present a state of facts at all comparable with the facts in this case, and can hardly be said to bear, one way or another, upon the question now before us. It was there held that there was no substantial evidence to sustain the idea that the insured was engaged in a character of business that would have relieved the insurance company from liability under its policy.

In the *Tison* case, the assured had signed an application for insurance in which he stated that he had no impairment of vision. The fact was that he was blind in

one eye. The company resisted payment, on the ground that the statement was made with intent to deceive. But other facts, set forth in the opinion, effectually dispose of the contention that there was any such intention to deceive. The insured, a blacksmith, had lost the sight of the eye when nine years old, but without any apparent handicap to him in following his occupation. Furthermore, the condition of the eye was apparent to the most casual observer. It was shrunken and discolored. The agent saw the assured at the time that the application was being made out and several times thereafter before the issuance of the policy. He could not possibly have been deceived by anything that the assured told him, for he saw the very condition of which the company later complained.

In the *Houston* case, the assured failed to disclose the fact that he had had a mild acute attack of appendicitis and that a physician in Alaska had advised an operation, which was not performed until sometime later by another physician in Seattle. The court held that it was not in the contemplation of the parties that the assured should disclose in his answers each and every time that he had consulted a physician, and that it was a question of fact for the jury to determine whether the particular ailment was a serious disease, and whether or not the applicant so considered it when he answered the question in the application. The question of intent was, therefore, dependent upon a question of fact to be determined by the jury.

All of those cases and others that might be cited rested upon the principle that a disputed question of fact lay at the basis of the question of intent, and hence it could not be decided as a matter of law. Those cases, therefore, are not out of harmony with the rule or the reasoning followed in this case.

We base our conclusion here upon the ground that the acts of Reeder, taken as a whole, establish, as a matter of law, an intent to deceive. Upon that principle, it follows that the judgment must be reversed, with direction to the trial court to dismiss the garnishment proceedings.

It is so ordered.

BEALS, C. J., MAIN, MITCHELL, BLAKE, GERAGHTY, and MILLARD, JJ., concur.

HOLCOMB, J. (dissenting)—The record shows that nearly all of the accidents which had occurred during the preceding three years, before the accident in question happened, were accidents involving the Hamilton Auto Freight, Inc., of which Reeder had been a member, and in which he was not an actor in operating the machines.

At the conclusion of the evidence in this case, the trial judge, a careful and experienced trier of facts, asserted that there was an absolute lack of any suspicion that Reeder intentionally withheld anything from the company, and accordingly made the finding that there was no misrepresentation made in the negotiation of the policy of insurance with the intent to deceive or defraud the garnishee-defendant, nor were any misrepresentations made to the negotiation of the policy in any manner material to the risk.

The cases relied upon by appellant, and in the prevailing opinion: *Quinn v. Mutual Life Insurance Co.,* 91 Wash. 543, 158 Pac. 82; *Day v. St. Paul Fire & Marine Insurance Co.,* 111 Wash. 49, 189 Pac. 95; *Hayes v. Automobile Insurance Exchange,* 126 Wash. 487, 218 Pac. 252; Id., 129 Wash. 202, 224 Pac. 594; *Walker v. Metropolitan Life Insurance Co.,* 132 Wash. 615, 232 Pac. 694; *Mutual Life Insurance Co. v. Campbell,* 170 Wash. 485, 16 P. (2d) 836, and *Perry v. Con-*

*tinental Ins. Co., ante* p. 24, were all cases where the facts misstated by the insured were so positive, palpably false and wilfully made by the assured, with the fraudulent intention of making the contract of insurance, that the contracts were shown conclusively to have been induced by fraud, as particularly true in the cases of *Day v. St. Paul Fire & Marine Insurance Co., supra; Hayes v. Automobile Insurance Exchange, supra;* and Id., 129 Wash. 202, *supra.*

The facts in this case tending to show that there was no intent to deceive in procuring the insurance are much stronger than in the cases of *Bowden v. General Insurance Co.,* 152 Wash. 199, 277 Pac. 443; *Tison v. American National Insurance Co.,* 163 Wash. 522, 1 P. (2d) 859, 3 P. (2d) 998; *Houston v. New York Life Ins. Co.,* 159 Wash. 162, 292 Pac. 445; and *McKay v. General Accident, Fire and Life Assurance Corporation, Ltd.,* 158 Wash. 207, 290 Pac. 820, where the insurance contracts were enforced in favor of the assured.

The majority decision, in effect, overrules these decisions and annuls Rem. Rev. Stat., § 7078.

For the foregoing reasons, the judgment should be affirmed, and for which reasons I dissent.

TOLMAN, J., concurs with HOLCOMB, J.