[No. 15539.  Department One.  April 10, 1920.]

ANN E. DAY, *Respondent*, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, *Appellant*.[1]

INSURANCE (10)—AGENTS OR BROKER—RELATION TO PARTIES—STATUTES.  Under the insurance code, Rem. Code, § 6059-1 *et seq.*, defining an "agent" as the person *appointed* and *authorized* to solicit applications and effect insurance, and a "broker" as a person not appointed who acts or aids in any manner in negotiating contracts of insurance for a party other than himself, one having no appointment and performing only the acts constituting him a broker, could not be an agent of the insurance company, and it was error to refuse to so decide as a matter of law.

SAME (9)—AGENCY—LICENSE TO DO BUSINESS—EFFECT ON POLICY.  The fact that an insurance broker had no license to do business as required by Rem. Code, § 6059-1, does not render insurance which he obtained void or voidable, but merely renders him personally liable for the penalty provided by the act.

SAME (189)—ACTIONS ON POLICIES—INSTRUCTIONS—FRAUD.  Upon an issue as to fraud and deceit in obtaining an insurance policy, it is not prejudicial error to instruct that the defense must be established by clear and convincing evidence because it is the policy of the law to deal with men on the presumption of their honesty.

SAME (109, 189)—INSTRUCTIONS—ESTOPPEL—KNOWLEDGE OF AGENT.  Upon an issue as to the estoppel of an insurance company to set up the defense of deceit in misrepresenting the automobile insured as a new car, it is error to give an instruction warranting the jury in finding an estoppel if the insurance agent subsequently received notice of the age of the car, "or something of that character."

SAME (72, 73)—AVOIDANCE OF POLICY—MISREPRESENTATIONS—INTENT TO DECEIVE.  Under Rem. Code, § 6059-34, providing that no representations in the negotiation of insurance shall be deemed material or defeat the policy unless made with intent to deceive, where one has procured insurance on an automobile by false representations known by him to be false, that it was a new 1911 model, when it was a 1910 second-hand car, a presumption arises of the intent to deceive, which is not overcome by the unsupported denial of the insured.

Appeal from a judgment of the superior court for King county, Smith, J., entered January 25, 1919, upon

[1] Reported in 189 Pac. 95.

the verdict of a jury rendered in favor of the plaintiff, in an action on a fire insurance policy.  Reversed.

*H. T. Granger* and *S. H. Steele,* for appellant.
*Flick & Paul,* for respondent.

MACKINTOSH, J.—The respondent is suing upon a fire insurance policy which was issued by the appellant on October 25, 1916, in the sum of $1,000, insuring a Winton automobile, owned by the respondent, which was burned December 15, 1916.  The appellant, as a defense to the action, relied upon the fact that the respondent, at the time the insurance was obtained, represented that the automobile was manufactured in the year 1911, and that when purchased by respondent in October, 1911, was new and had cost the respondent $3,400, whereas, in fact, the automobile was a 1910 model, and when purchased by respondent was a second-hand car and had cost her $2,000; $800 paid in cash and $1,200 in trade; that, had the appellant known that the car was a 1910 model, or a second-hand car, or that it had cost plaintiff only $2,000, the policy would not have been issued.  The testimony shows that insurance was not written on a 1910 model in October, 1916, at the rate charged the respondent. The respondent's husband, through one Fraser, procured the insurance from appellant, the husband telling Fraser that the car was a Winton touring car, manufactured in 1911, and that he had bought it new in that year.  Fraser telephoned this information to the agent of the appellant, who consulted the price list of Winton automobiles of 1911 model, and discovered therefrom that such a car would cost $3,400.  Appellant's agent filled out the application with the data given him by Fraser and wrote the policy.  The car had been sold by the Winton company previous to its

sale to the respondent and a payment of $700 or $800 made, the car then being returned to the Winton company for resale. The respondent was informed of these facts at the time of the purchase. The contract of purchase between respondent and the Winton company described the car as a 1910 model.

The premium on second-hand cars is higher than on new cars, and the insurance law requires schedules of rates to be filed with the insurance commissioner, deviation from which renders the insurance company guilty of a misdemeanor. The respondent's husband knew that the car was second-hand and admitted that he represented it as a new car, but denied that he knew it was a 1910 model. The jury returned a verdict for the respondent in the full amount of the policy, from the judgment upon which verdict the appellant brings this appeal, basing its claim to a reversal on four grounds; first, that a conclusive presumption of implied deceit arose from the testimony and left no question of fact for the jury as to respondent's intent to deceive; second, that Fraser was the agent of the insured and that his statements and acts bind her; and third, that an erroneous instruction was given as to the degree of proof necessary to establish fraud; and fourth, that the appellant was not estopped by the knowledge of its agent, obtained in a conversation with the respondent's husband after the issuance of the policy, to deny that the respondent or Fraser had misrepresented the facts at the time the policy was procured.

The first question we will consider is the instruction given by the court to the jury whereby the jury was empowered to determine, from the facts, as to whether Fraser was the agent of the appellant or the agent of the respondent. In 1911, the legislature passed the insurance code, which is a complete act in itself and

was intended to cover the entire insurance relationship, and by that code the acts constituting one an insurance agent or insurance broker, and the duties and powers of such insurance agent or broker, are defined. Under the act, Rem. Code, § 6059-2, an insurance agent is defined as "a person . . . duly appointed and authorized by an insurance company, to solicit applications for insurance . . . or to solicit applications and effect insurance in the name of the company . . .," and an insurance broker is defined as "any person . . . not being an appointed agent for the company in which insurance . : . is effected, and acts or aids in any manner in negotiating contracts of insurance . . . for a party other than himself." By § 6059-45, insurance agents and brokers must apply for and receive licenses. The act further provides for penalties for one acting as agent or broker without license.

Under the testimony, Fraser was not an agent of the appellant as defined by the statute, but performed all the acts which the statute defines as constituting one a broker, except that he had no license to act in that capacity. It is therefore argued by respondent that Fraser, not being a legally constituted broker under the act, was an agent of the insurance company, under the rule obtaining prior to the passage of the insurance code, which rule was that an insurance agent who places insurance in a company other than his own would be considered the agent of the insurer, so that the insurer would be bound by his acts and statements at the time of issuing the policy, in the same manner as if he was its regularly appointed agent. Cooley's Briefs on Insurance, pages 2491 and 2629; *Mesterman v. Home Mut. Ins. Co.*, 5 Wash. 524, 32 Pac. 458, 34 Am. St. 877.

The insurance code, however, being a complete act on the subject of insurance, had among its purposes the definite establishment of the status of agents, brokers, etc., and under that act a person not an appointed agent of a company, who acts in any manner in negotiating contracts of insurance for a party other than himself, is a broker, and we have held in *Reynolds v. Pacific Marine Ins. Co.*, 105 Wash. 666, 178 Pac. 811, that:

"Under the insurance code, Rem. Code, § 6059-1 *et seq.*, defining an 'agent' as the person *appointed* and *authorized* to solicit applications and effect insurance, and a 'broker' as a person not appointed who acts or aids in any manner in negotiating contracts of insurance for a party other than himself, and requiring larger license fees for brokers than for agents, an insurance concern that makes application to the agents of the company for a policy of marine insurance is a broker and acts as agent of the owners of the boat, so that its knowledge would not be imputed to the company." [Syllabus.]

Fraser had no appointment or authority to solicit applications and effect insurance for the appellant, therefore he could not be its agent. He aided in negotiating the contract of insurance with the appellant, therefore he was a broker. But it is contended that he could not be a broker for the reason that he had failed to take out a license. The acting as a broker without having complied with the requirements of the act does not render the insurance which he had obtained void or voidable, but merely rendered him personally liable for the penalty provided in the act for having assumed the functions of a broker without obtaining the proper license. There is nothing in the testimony to show that appellant or respondent were acquainted with the fact that Fraser was not possessed of a proper license, and he, having been selected by

the respondent, there is no reason why the appellant should be charged with the responsibility for his conduct. Even though we might concede that Fraser was not a broker, yet the respondent should be bound by his acts upon the theory that Fraser was her agent, thus departing from the rule existing before the passage of the insurance code, for the reason that the code expressly provides who shall be agents of the company, and was passed for the purpose of clearly defining the insurance company's duties and liabilities. It was error, therefore, for the court to leave to the jury, as a question of fact for it to determine, the status of Fraser, and it should have been determined, as a matter of law, that Fraser was either the agent or broker representing the respondent, and any knowledge he had or representations he made were the knowledge and representations of the respondent.

Complaint is also made as to the definition given in the instruction of the character of proof necessary to establish fraud and misrepresentation. The court properly told the jury that fraud and deceit must be established by clear and convincing evidence, and, continuing, said that fraud was to be proven by potent and strong evidence, because it is the policy of the law to "deal with men on the basis of their honesty and with the presumption that men are dealing with one another in a spirit of fairness and honesty." Although this instruction may have been in language somewhat different from that ordinarily used, we cannot say that it does not properly measure the degree of proof necessary to establish fraudulent conduct, and was not such an instruction as to call for a reversal of the case.

The appellant argues that the court was also in error in submitting to the jury an instruction touching upon the question of estoppel, as follows:

"There is testimony tending to show, at least on the part of the plaintiff, that there was a conversation between Mr. Day and Mr. Ritter, the local agent of the company. Whether that conversation took place is for you to determine. It is a disputed matter of fact, but it is alleged that a certain conversation was had between the parties at that time. There was at a later time a direct and undisputed meeting between Mr. Day and Mr. Ritter, and there is testimony to indicate that at the time there was a discussion between the parties as to the car, as to its make, as to its model, the age of it, and when it was made, and some other features of it. You will determine the truth as between the parties in that dispute. If at that time you find from the evidence that there was a discussion as to the age of the car, or its model, or something of that character, or if you should further find that Mr. Day did not, in any wise, at that time mislead the insurance company, or should you find that the matter of the age of the car was discussed and left in doubt, then it is the law that the company is estopped from asserting the claim that it is injured, or was injured by a misrepresentation made by Mr. Fraser at an earlier period of similar facts, if you find such to have been made regarding the age of the car."

This instruction was given regarding a conversation that respondent's husband had with the appellant's agent after the policy had been written, in regard to the discrepancy in the engine number, to the effect that:

"When the policy came I noticed some discrepancy in the number of the engine. When I first gave the number of the engine I made a note of it on some slip. I looked the policy over and looked at the number and noticed that it was not the number I had given Mr. Fraser. . . . . I called Mr. Ritter on the telephone and told him that I had received the policy and the number on the engine was wrong, and he said to bring it down there and they would change it. I went down immediately and saw Mr. Ritter and told him about it, and he said it was all right and told the young

lady to change it.  Mr. Ritter said they held that policy up about two weeks.  They had to send it down to San Francisco.  Ritter asked me when I bought that car, and I told him in 1911.  That is all I said to him.  He handed me back this with the correction on it.  The young lady took the rubber and erased it and put it back on the machine and put the number on it, the number I handed him.''

This conversation could only have left in doubt the question as to the age of the car.  The appellant's agent was not empowered to cancel the policy, which was then in effect, nor did he do or say anything which damaged the respondent or put her in a worse position.  The appellant's agent had no reason then to believe that the information given him by Fraser was false.  There was, in fact, nothing then known which would create a suspicion as to the matter.  The company can hardly be estopped by the failure of its agent to leave his office to look at the car when there was no stronger reason calling for his doing so than is shown in the record.

That instruction does not refer to the question as to whether the car was purchased new, which was one of the material matters in issue, and if the instruction should have been given at all, it was error to omit that feature.  Furthermore, the reference to ''something of that character'' is too indefinite and uncertain to be the foundation for an estoppel, and, in fact, a discussion as to the age, or model of the car, ''or something of that character,'' does not amount to an assertion of a fact which would tend to have misled the respondent so that appellant should be estopped from a denial thereof.

The instruction was further incorrect in that the appellant is not estopped from asserting a claim that it was injured by the misrepresentations previously made by Fraser, representing the respondent, and who pro-

cured the issuance of the policy, by reason of the fact
that Mr. Day subsequently did not do anything to mis-
lead the company. The act of the respondent, through
Fraser, was a positive one, and was of such a nature
as to invalidate the policy, and the fact that subse-
quently the respondent, through her husband, did
nothing further to mislead the company, would not
estop the company from claiming the illegality of
Fraser's original act.

We come now to the most important question raised
in the case, namely, the effect of the representations
and statements made in regard to the model, age and
newness of the car, which are claimed by the appellant
to have been false and fraudulent, and which are con-
ceded by the respondent to have been misstatements.
It is contended by the appellant that these statements
having been made to it by Fraser from the basis of
information furnished him by respondent's husband,
and having been made by the husband with knowledge
that they were untrue, or, at least, inaccurate, they,
therefore, make void the policy, and that it was
error to submit to the jury the question of whether
those representations were made with intent to deceive.
Section 6059-34, Rem. Code, reads:

"No oral or written misrepresentations or warranty
made in the negotiation of a contract or policy of in-
surance, by the assured or in his behalf, shall be deemed
material or defeat or avoid the policy or prevent it
attaching, unless such misrepresentation or warranty
is made with the intent to deceive. . . ."

It is argued by respondent, relying on this section,
that, although these representations were made with
knowledge of their falsity, it was a question of fact
for the jury to determine as to whether they were
made with intent to deceive. The testimony shows
that the respondent's husband knew that the car was

a 1910 and not a 1911 model; knew, also, that it had been used prior to his wife's purchase of it, and that the car was not, as he represented it, a new car at the time of such purchase. To establish the lack of intent to deceive by making these fraudulent representations, he testified that he had no such intent in making them, and that he considered that a car used as little as had been the car at the time of the purchase was a new car, or, at least, one as good as a new car, and that, although the contract of purchase, with which he was familiar, designated the car as a 1910 model, he represented it as a 1911 model, either because he did not consider there was any difference, or that he had forgotten the actual date of its manufacture.

We have gone far in maintaining, as a question of fact, the intent accompanying false and fraudulent representations, and have allowed to be submitted to the jury for its determination the question of intent where there has been very slight proof that the applicant for insurance might have had no idea of procuring the policy by misrepresentations, but the rule should not be so far extended as to include a case such as this and allow insurance to be enforced which was not procurable had the truth been told, where it was issued relying upon fraudulent statements and the proof of honest intent consists merely in the applicant's bare affirmation that his intent was honest. The proof of the making of false and fraudulent representations raises a presumption of dishonest motive, which must be overcome by evidence establishing an honest motive. It is true that motive and intent are mental states, and that evidence of the mental state of an applicant is sometimes hard to prove where there are no facts or circumstances to establish it other than the applicant's own declaration. However, honesty and fair dealing would seem to require that, in

order to overcome the presumption, there must be some testimony more concrete than was here given when an applicant admits, as he does here, that the representations were made with the knowledge that they were untrue. It may be that representations made at a time when the applicant may have forgotten the facts, or made through carelessness or mistake, or where the representative of the insurance company had prior knowledge of the facts which were contrary to the representations made by the applicant, make submissible to the jury the question of whether the applicant acted with intent to deceive or not. In this case the respondent admits that the statements were "material enough to avoid the policy if there was an intent to deceive," and they having been made with knowledge of their falsity, a presumption arises of the intent to deceive, which presumption is not overcome by the unsupported declaration of the applicant that no such intent existed in his mind at the time.

The appellant relies largely upon the case of *Quinn v. Mutual Life Ins. Co.*, 91 Wash. 543, 158 Pac. 82, where representations were made in an application for life insurance that the applicant had not been suffering from any physical disability and had consulted no physicians within a given time prior to the application. These representations were false, and the lower court, trying the case without a jury, found that they were made with no intent to deceive. This court, upon appeal, reviewed the facts and found that the representations could not have been made without an intent to deceive, and therefore cancelled the policy. The *Quinn* case, even though it had not thereafter been questioned by this court, would hardly support the contention that appellant makes, that all material false representations made by an applicant would relieve an insurance company, for that would nullify the provision that such

representations should not have that effect if they were not made with intent to deceive. The result in the *Quinn* case was correct for the reason that it was a case tried without a jury, and the court determined the fact to be that there was an intent to deceive at the time the representations were made.

The respondent bases her claim that the instruction given by the court was correct largely upon the case of *Brigham v. Mutual Life Ins. Co.*, 95 Wash. 196, 163 Pac. 380, where the applicant had made representations similar to those in the *Quinn* case, and this court held that the question of whether those representations had been made with intent to deceive was a question of fact which should have been submitted to the jury. The decision in that case is correct for the reason that, although false representations were made, the agent of the company, to whom they were made, had prior knowledge of the fact, he having been the physician in attendance upon the applicant, that the representations were false, and therefore there was a question as to whether the company was deceived. In that case the court said:

"The difference in the facts makes the difference in the law. We did not intend to hold in the *Quinn* case that misrepresentation alone was sufficient, as that would be flying into the teeth of the statute, which was referred to in the opinion followed by this observation: 'In view of this statute, the only fact to be determined is whether or not the representations made by the applicant were made, as the court found, without intent to deceive.' This language can mean nothing else than that the intent to deceive must be found as a fact."

The *Brigham* case is to be distinguished from the case at bar on the ground that, in the case at bar, there is no evidence, other than the applicant's denial of fraudulent intent, to overcome the presumption which arises from the making of the false representations

with knowledge of their falsity. We have held that testimony given by a witness that he had looked but did not see a certain object, when he must have seen it had he looked, is not evidence of the fact to which he testifies, and so here, we hold that a bare statement by a person that he had no intent to deceive is not evidence of that lack of intent 'where the original statements made by him were made with knowledge of their falsity. *Woods v. Insurance Company of Pennsylvania*, 82 Wash. 563, 144 Pac. 650.

The case of *Goertz v. Continental Life Ins. & Inv. Co.*, 95 Wash. 358, 163 Pac. 938, submitted to the jury the question of the applicant's intent where the testimony showed that the applicant had stated that he was not suffering from any disease and had never consulted a physician, and the testimony showed that he was examined and found in good health in December and in July prior to his application; that he was examined by the company's doctor at the time of his application and found to be in perfect condition, but had died of tuberculosis some nine months after the application, although there was testimony of another physician that, in the April preceding his application, he had been examined and found to have been suffering from tuberculosis. Under this conflicting evidence it was proper to submit the question to the jury, this court saying:

"The case should have been submitted to the jury under proper instructions upon the questions of whether the representations and warranties complained of were in fact false when made, were known by the insured to be such at the time, and were made with intent to deceive."

In the case at bar, it is indisputable that the representations were false and known to be false when made.

In *Askey v. New York Life Ins. Co.*, 102 Wash. 27, 172 Pac. 887, L. R. A. 1918F 267, the applicant answered the question that he was not suffering from any disease of the lungs, and in 1911 that he had had an attack of pneumonia, from which he had recovered, and that he had consulted no physician for any other ailment. At the time the application was made in 1915, the examining physician of the insurance company made a complete examination and found no indications of tubercular trouble. The doctor who had treated the applicant in 1911 made a certificate that he had at that time treated him for tuberculosis. Upon this evidence the court properly submitted to the jury the question as to whether the false representations made in the application were made with intent to deceive, this court saying:

"If in truth the insured had tuberculosis, there is no evidence showing that he had knowledge of the fact, other than the natural inference that one really suffering from such a disease would probably know it. Dr. Klamke was not called as a witness, and there is no proof that he ever informed his patient that he was suffering with tuberculosis. The death certificate filed by the respondent was not proof of any disease suffered by the insured four or five years prior to death. It constituted an admission by the respondent that the statement in the death certificate was probably true. Such statement constituted *prima facie* evidence which was subject to refutation, and, even allowing it full force to establish the physical condition of the insured, it was not proof of the insured's intent to deceive the company."

The case at bar on its facts is distinguished from the *Askey* case.

Under the assignment of error last considered, it was improper for the court to have submitted the case to the jury, and the appellant's motion for judgment notwithstanding the verdict should have been granted.

Judgment reversed.

HOLCOMB, C. J., MAIN, MITCHELL, and PARKER, JJ., concur.