[No. 22374. *En Banc.* October 28, 1930.]

LAURA A. HOUSTON, *Appellant*, v. NEW YORK LIFE INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 292 Pac. 445.

*J. L. Corrigan,* for appellant.
*Wright & Catlett,* for respondent.

PARKER, J.—The plaintiff, Mrs. Houston, seeks re-
covery upon a $3,000 reinstated life insurance policy
issued by the defendant insurance company, insuring,
for her benefit, the life of her husband, Edson Kell
Houston, now deceased. A trial upon the merits in
the superior court for King county, sitting with a jury,
resulted in a judgment rendered by that court denying
Mrs. Houston recovery, notwithstanding the general
verdict of the jury awarding her recovery for the full
amount of the policy. From this disposition of the
cause in the superior court, Mrs. Houston has appealed
to this court.

The judgment was, by the trial judge, apparently
rested upon the ground that the special finding of the
jury in answer to the second interrogatory submitted
to it, hereinafter quoted, is inconsistent with the gen-
eral verdict, and conclusively determines that Houston,
with intent to deceive the company, made false state-
ments as to his health in his application for reinstate-

ment of the policy, and thereby induced the company to reinstate the policy; thus entitling the company to judgment denying recovery upon the policy, notwithstanding the verdict, as a matter of law.

The briefs of counsel are directed largely to the question of whether or not the judgment can be sustained upon that ground. The facts controlling of that question, we think, may be fairly summarized as follows: On April 8, 1927, the company issued to Houston its insurance policy, insuring his life for the benefit of Mrs. Houston. He then paid premium on the policy up to July 16, 1927, when, by its terms, the first annual premium thereon became due. He did not pay that annual premium, and, because of such non-payment, the policy, by its terms, lapsed and became ineffective. On October 18, 1927, Houston applied to the company for reinstatement of the policy, filling out and signing one of the company's blank applications for reinstatement, wherein he answered questions therein as follows:

"1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued? (If not, give details.) Ans. Yes.

"2. Within the past 24 months have you had any illnesses or have you consulted or been treated by any physician or physicians? (If so, give full details including nature, date, and duration of each illness, the name of each physician, and the dates of consultation or treatment.) Ans. Apr. 1, 1927, one week with grippe. Dr. Ellis, Ketchikan, made one call. . . .

"I hereby certify that the foregoing answers are full, complete and true, and agree that the company believing them to be true shall rely and act thereon."

This application, accompanied by the required payment of premium for reinstatement, was soon thereafter received by the company, and the policy accordingly reinstated. On November 27, 1928, Houston died.

On December 5, 1928, due proof of Houston's death was furnished to the company. On February 5, 1929, the company, claiming to have discovered that Houston had falsely answered the above quoted questions in his application for reinstatement of the policy, with intent to deceive the company and thereby induce it to reinstate the policy, refused to make payment of the insurance to Mrs. Houston, but tendered back to her the amount of premiums paid upon and since the reinstatement of the policy. She refused to accept such return of the premiums, and commenced this action. Upon the trial, the issue was whether or not Houston falsely answered the above quoted questions in his application for reinstatement of the policy, with intent to deceive the company. There was evidence tending to show that, about September 6, 1927, Houston had consulted Dr. Beeson and complained of pains and tenderness around the appendix of some ten days' duration, and had been advised by the doctor that he should have an operation. We shall presently further notice this evidence, in connection with another branch of our inquiry. The jury rendered a general verdict as follows:

"We, the jury in the above entitled cause, do find for the plaintiff in the sum of three thousand and no/100 dollars ($3,000) with interest at 6% from November 27, 1928."

The jury also made two special findings, as follows:

"We, the jury in the above entitled cause, do make the following special finding in answer to the following interrogatory:

" 'Interrogatory No. 1. Was the insured, Edson Kell Houston, on October 18, 1927, to the best of his knowledge and belief, in the same condition of health as he was on the 8th day of April, 1927, the date when the policy was issued?

" 'Answer: Yes.'

"We, the jury in the above entitled cause, do make the following special finding in answer to the following interrogatory:

"'Interrogatory No. 2. Did the said Edson Kell Houston, on or about September 6, 1927, consult Dr. J. B. Beeson of Ketchikan, Alaska, and at that time complain of pains and tenderness around the appendix of about ten days' duration and receive from Dr. Beeson a diagnosis of sub-acute appendicitis and advise that he should have an operation?

"'Answer: Yes.'"

We first inquire, Is the jury's special finding, in the form of its answer to Interrogatory No. 2, conclusive that Houston made false answer in his application for reinstatement of the policy, with intent to deceive the company? Manifestly, the general verdict, standing alone, negatives any such conclusion. This view has additional support in the jury's special finding in the form of its answer to Interrogatory No. 1. It is not enough to avoid the insurer's liability upon a policy that untrue statements are made in the application for the insurance or reinstatement thereof; but, to avoid such liability, there must be, accompanying such untrue statements, an intent on the part of the applicant to deceive the company.

Hence, in order that the jury's special finding in its answer to Interrogatory No. 2 become conclusive against Mrs. Houston's claim of recovery upon the policy, that special finding must be held to mean that, in making the untrue statements by Houston in his application for reinstatement of the policy, he did so with intent to deceive the company. Plainly, we think this special finding does not, in terms, or inferentially, so decide, and that therefore it has no controlling force upon the general verdict. Manifestly, standing alone, the general verdict determined that and every other issue in favor of Mrs. Houston's claim of recovery.

In *McCorkle v. Mallory*, 30 Wash. 632, 71 Pac. 186, Judge Mount, speaking for the court, said:

"Where a special verdict is susceptible of two constructions, one of which will support the general verdict and the other will not, that construction will be given the special verdict which will support the general verdict."

In *Gaudie v. Northern Lumber Co.*, 34 Wash. 34, 74 Pac. 1009, Judge Hadley, speaking for the court, made similar observations as follows:

"A special finding must be irreconcilably inconsistent with the general verdict before the latter can be set aside and the former substituted in its place."

In *Campbell v. Jones*, 73 Wash. 688, 691, 132 Pac. 635, adhering to this view of the law, we quoted with approval from 2 Thompson on Trials (2d ed.), § 2693, as follows:

"The court will not strain the language of the special findings to override the general verdict. If possible, they will be interpreted so as to support the verdict rather than overturn it. No presumption will be made in their favor; 'nor will they control the general verdict, unless they are invincibly antagonistic to it;' "

citing also, in addition to our above noticed decisions: *Mercier v. Travelers' Ins. Co.*, 24 Wash. 147, 64 Pac. 158, and *Cameron v. Stack-Gibbs Lumber Co.*, 68 Wash. 539, 123 Pac. 1001. We are of the opinion that this special finding of the jury is not inconsistent with Mrs. Houston's right of recovery, as awarded her by the general verdict of the jury.

Is the evidence introduced upon the trial so conclusive of Houston's intent to deceive the company by his above quoted answers in his application, as to call for the court so deciding as a matter of law, instead of leaving that question for decision by the jury? Counsel for the company so contend, and argue that,

therefore, in any event, the judgment of dismissal, notwithstanding the general verdict, constituted a correct disposition of the cause. The deposition testimony of Dr. Beeson, in so far as it gives us any information of any consequence touching this question, is as follows:

"Q. Did Mr. Houston between October 18, 1925, and October 18, 1927, consult you, and if so, upon what date or dates, and where? A. He did; at my office on the 6th of September, 1927. Q. Will you state in as much detail as possible what Mr. Houston stated to you with reference to his own physical history and physical condition? A. I am relying entirely upon my notes made at the time of his visit. He is one of many patients who visit my office but once. I made such notes as would recall his case in case of future business and dismissed the case from my mind and responsibility when he did not return. I do not recall anything about the case or visit except what is shown by my notes. Referring to my notes, his complaint showed evidence of a soreness of about ten days' duration, the principal complaint being pain and tenderness in the right lower quadrant of the abdomen. His complaint was of pain and tenderness around the appendix the previous ten days. There was no history of any previous attacks, and the notes would indicate that it was of a mild nature. My diagnosis to him was a mild acute attack of appendicitis. Q. Will you please read into your testimony the contents of your record? A. 'Dated September 6, 1927. Name: E. K. Houston, aged 36; occupation, trap man; symptoms, tenderness right lower quadrant for ten days, sub-acute appendicitis, advised operation.' Q. Do you have a recollection of this visit of Mr. Houston, apart from your office records? A. No.''

Of course, Houston's testimony was not available upon the trial, so we do not have his version of any consultation by him with Dr. Beeson, nor of his own view of the extent of any affliction he may have then had. Dr. Beeson's testimony indicates his belief that Houston's ailment at that time was "a mild acute attack

of appendicitis." Nothing further was done by Houston concerning any appendicitis affliction he may have then had, until November, 1927, after the reinstatement of the policy by the company. On November 14, 1927, Dr. Wilkins performed a successful appendicitis operation upon Houston, from which the record before us warrants the conclusion that he entirely recovered, at least several months before he died on November 27, 1928, of a disease of the heart.

There was other testimony to the effect that, at the time of Houston's making his application for reinstatement of the policy, and up to the time of the actual reinstatement of the policy, he was in general good health. We have no other evidence in the record, as we read it, of the condition of Houston's health or of his consulting any physician or physicians prior to the reinstatement of the policy, other than his consulting Dr. Ellis about April 1, 1927, when he had the grippe. Under all the circumstances appearing, we are of the opinion that it could not have been properly decided by the court, as a matter of law, that Houston made the statement in his application for reinstatement of the policy falsely, with intent to deceive the company.

Section 34 of our insurance code, chapter 49, Laws of 1911, p. 197, embodied in an amendment to that section by chapter 192, Laws of 1915, p. 703, and now to be found in Rem. Comp. Stat., § 7078, reads as follows:

"No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive."

We have held in our decisions rendered since the enactment of that provision in 1911 that "it is not enough

under this statute to find that the representations were false; it must further be found that they were made with intent to deceive,'' before the beneficiary's right of recovery upon the policy can be defeated or avoided by the insurer. *Brigham v. Mutual Life Ins. Co.*, 95 Wash. 196, 163 Pac. 380; *Goertz v. Continental Life Ins. & Inv. Co.*, 95 Wash. 358, 163 Pac. 938; *Askey v. New York Life Ins. Co.*, 102 Wash. 27, 172 Pac. 887; *Day v. St. Paul Fire & Marine Ins. Co.*, 111 Wash. 49, 189 Pac. 95. It is true that, in this last cited case, we held, as a matter of law, that there could be no recovery, but we think that a critical reading of that decision will show a clearer case of untrue statements by the insured, in his application, with intent to deceive than here appears.

Some contention is made in behalf of the company rested upon the theory that this statutory provision is not controlling in this case, as we understand counsel, because Houston's application for reinstatement of the policy was not ''made in the negotiation of a contract or policy of insurance;'' the argument being that Houston's application for reinstatement of the policy and its reinstatement by the company in pursuance thereof did not constitute a contract of insurance. True, the reinstatement of the policy did not constitute the original contract of insurance here in question, but it did constitute a contract to reinstate the lapsed original contract and policy of insurance. It seems clear to us that the application for reinstatement of the policy was made in the negotiation of a contract of insurance, within the meaning of this provision of the statute.

We conclude that the judgment of dismissal must be reversed. It is so ordered.

It is stated in the briefs that there was made in behalf of the company in the trial court an alternative

motion for a new trial, which was not disposed of by the trial court because of the rendering of the judgment of dismissal. The record before us fails to show that any such motion was made. However, if the record in the trial court so shows, our reversal of the judgment of dismissal results in the company's having the right to have such motion for new trial disposed of by the trial court. The cause is remanded to the superior court, with directions to proceed in harmony with our views and conclusions herein stated.

MITCHELL, C. J., MAIN, HOLCOMB, MILLARD, and FULLERTON, JJ., concur.

TOLMAN, J. (dissenting)—As I read the record, the deceased, from the day he was advised that he had appendicitis, relied upon that advice and made plans for an early operation. During this time, he made the answers quoted in his application for reinstatement of the policy, and necessarily he knew that they were false. The minds of reasonable men cannot differ in the conclusion that he intended to deceive.

I therefore dissent.

BEALS, J., concurs with TOLMAN, J.