[No. 23724. Department Two. December 14, 1932.]

THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Respondent*, v. WESLEY CAMPBELL *et al.*, *Appellants.*[1]

*Lloyd R. Savage,* for appellants.

*Peters, Evans & McLaren* and *W. Byron Lane,* for respondent.

STEINERT, J.—This action was instituted by the plaintiff to cancel an insurance policy in the sum of

[1]Reported in 16 P. (2d) 836.

three thousand dollars, issued by it on the life of defendant Wesley Campbell, with Muriel E. Campbell, his wife, named as beneficiary. The policy contained a provision for the monthly payment to the insured of the sum of ten dollars per one thousand dollars of its face amount, in case of permanent disability. By their cross-complaint, the defendants sought to recover disability benefits alleged to have accrued under the terms of the policy, and further, to compel a waiver of all future premium payments thereon. The cause came on for trial before the court, sitting with a jury, and resulted in a verdict for the defendants in the sum of $480, being the total of sixteen months' disability benefits. On motion of plaintiff, the court granted it a judgment notwithstanding the verdict of the jury in favor of defendants, and decreed that the policy be cancelled. The defendants have appealed from the judgment and decree.

In its judgment, the court found, *as a matter of law,* "that the written misrepresentations made by the said Wesley Campbell in his application for insurance were made with an intent to deceive" and further found that the motion for judgment notwithstanding the verdict was well taken. The question involved in this appeal is the correctness or incorrectness of the action of the court in entering its judgment and decree based upon the findings therein contained.

On September 29, 1929, Wesley Campbell, who will hereinafter be referred to as though he were the sole appellant, applied to, and subsequently obtained from, respondent a policy, in all respects similar to the one here in question, except that its face amount was in the sum of two thousand dollars. That policy contained the usual incontestability clause, and more than one year having elapsed since its issuance, the respondent could not, and did not, take any action with reference thereto,

and, as a matter of fact, full disability benefits are now being paid thereunder.

On January 28, 1930, appellant applied for the policy here in question, making written application therefor. The application contained, among other things, the following preamble:

"ALL QUESTIONS TO BE ANSWERED BY THE PERSON TO BE INSURED.

"This application is made to the Mutual Life Insurance Company of New York herein called the Company. All the following statements and answers and all those that the insured makes to the Company's Medical Examiner, in continuation of this application, are true, and are offered to the Company as an inducement to issue the proposed policy. . . ."

and also the following questions and answers:

"(16)    What illness, diseases, injuries and surgical operations have you had since childhood?    None.

"(17)    State every physician or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years for any ailment, serious or not serious.    None.

"(18)    Have you stated in answer to question 16 all illnesses, diseases, injuries and surgical operations which you have had since childhood?    Yes.

"(19)    Have you stated in answer to question 17 every physician and practitioner consulted during the past five years and dates of consultation?    Yes.

"(20)    (a)    Are you in good health?    Yes. . . . .

"(25)    (a)    Is there any impairment of vision in the right eye?    No.

"(b)    Or in the left eye?    No. . . .

"I certify that each and all of the foregoing statements and answers were read by me and are fully and correctly recorded by the Medical Examiner. (Signed) Wesley Campbell."

A copy of the application was attached to the policy when delivered to appellant.

The company's solicitor who sold and delivered both of the policies to the appellant was a cousin of Mrs.

Campbell. At the time that the application for the first policy was made, and at various times before the one for the second was made, discussions were had between the solicitor and the appellant relative to increasing the amount of the insurance; appellant's finances, however, stood in the way of any increase prior to February 3, 1930. The expected arrival of a baby in the family, however, ultimately furnished the incentive to the appellant to apply for the second policy.

Appellant's testimony disclosed the following facts: In 1918, he joined the United States army, and was in the service for a period of four years and ten days. In 1924, prior to his marriage, he became afflicted with gonorrhea, for which he was treated over a period of about two months, the treatment resulting in a full recovery. After his marriage, he was employed as a steel-worker for a while, then worked for a powder company, and finally became a watchman, or detective, for the Great Northern Railway. In the meantime, that is, in 1929, the first policy had been applied for and obtained.

In January, 1930, appellant was having trouble with his eyes, and on January 28 of that year consulted Dr. McCoy, an eye specialist in Seattle. An examination disclosed that his eyes were in bad shape. Dr. McCoy asked him if he had ever had syphilis, but, according to the appellant, he did not then know what syphilis was, and had never heard of it before. Dr. McCoy then sent him to the Swedish Hospital, where a Wasserman's spinal fluid test was made upon him. When the report on the test was made to Dr. McCoy the next morning, the doctor told the appellant that he had very serious trouble with his eyes, and that he was going blind and would not see any more. The doctor then gave the appellant a sealed envelope containing the

Wasserman report, and directed him to Dr. Whitty, who was a specialist in urology.

Five days later, but before going to see Dr. Whitty, appellant called at the insurance solicitor's office and, after discussing the subject of increasing his insurance, was taken over to the company's medical examiner, where an examination was made and the application containing the questions and answers outlined above was signed. The company's doctor did not make any test for syphilis or gonorrhea, nor did he examine the appellant's eyes. In this connection, it may be said that there was nothing about appellant's physical appearance that indicated or suggested that he had any eye trouble, or was suffering from any effects of either of the above diseases.

Following the examination by the company's doctor, appellant went to see Dr. Whitty the same afternoon, tendering to him the sealed envelope which Dr. McCoy had given him several days before. Dr. Whitty examined the appellant, but did not then in so many words tell him that he had syphilis. Appellant's testimony, however, in that respect is suggestive:

"Q. Dr. Whitty told you about some serious trouble, did he not? A. Yes. Q. He told you you had syphilis, did he not? A. No. He thought McCoy had told me. Q. He said he thought McCoy had told you? A. Yes."

The appellant testified that he took a course of treatment from Dr. Whitty lasting from February 3 until some time in July. He further testified that he did not know that he had syphilis until he began to take this treatment.

Appellant's entire evidence to rebut any inference of intent to deceive is contained in two questions and answers:

"Q. Mr. Campbell, I want to ask you if, when you signed this application for the $3,000 policy that is involved in this case, whether you intended to deceive the company at the time you signed it? A. No, sir. Q. Did you say 'No, sir?' A. No, sir, I didn't intend that."

From February 3, 1930, appellant's trouble with his eyes progressed very rapidly, and by June of that year he had become totally blind. It was for this disability that he seeks recovery on his cross-complaint, under the second policy.

Respondent's evidence was to the effect that appellant knew that he had had syphilis in 1924, and that he had taken a course of treatment at the time for that disease. But since the motion for judgment notwithstanding the verdict must be tested by the evidence most favorable to the appellant, we do not take into consideration the adverse testimony. Nor do we even discount appellant's testimony by the equivocal manner in which, according to the record, it appears to have been given.

If, in the exercise of an overweening credulity, we accept appellant's statement that he never knew that he had the disease of syphilis until he started his course of treatment under Dr. Whitty, which was on the very day that he signed the application, and if we take him at his word when he says that he did not know what syphilis was and had never heard of it at that time, still the uncontradicted fact stands admitted by him that he knew, before he signed the application, that his vision was then seriously impaired, and that he was then told by an eye specialist that he was going blind.

It profits him nothing to say that he did not by his representations intend to deceive. A statement that is

obviously factitious cannot be accepted as being true on its face.

"We have gone far in maintaining, as a question of fact, the intent accompanying false and fraudulent representations, and have allowed to be submitted to the jury for its determination the question of intent where there has been very slight proof that the applicant for insurance might have had no idea of procuring the policy by misrepresentations, but the rule should not be so far extended as to include a case such as this and allow insurance to be enforced which was not procurable had the truth been told, where it was issued relying upon fraudulent statements and the proof of honest intent consists merely in the applicant's bare affirmation that his intent was honest. The proof of the making of false and fraudulent representations raises a presumption of dishonest motive, which must be overcome by evidence establishing an honest motive." *Day v. St. Paul Fire & Marine Ins. Co.*, 111 Wash. 49, 189 Pac. 95.

See, also, *Quinn v. Mutual Life Ins. Co.*, 91 Wash. 543, 158 Pac. 82; *Hayes v. Automobile Ins. Exchange*, 126 Wash. 487, 218 Pac. 252; reargued *En Banc*, 129 Wash. 202, 224 Pac. 594; *Walker v. Metropolitan Life Ins. Co.*, 132 Wash. 615, 232 Pac. 694.

That the respondent would not have issued the policy had it known that appellant's representations in the application were false, is amply established by the evidence. The Wasserman test made on the appellant showed a four-plus spinal fluid, which is the strongest reaction for syphilis. Appellant's condition is an extremely regrettable and unfortunate one, but that alone does not create a liability under the policy. We have here the case of a conscious and deliberate statement of material facts known to be untrue by the party making them, and made for the purpose of inducing another to enter into a contract involving a liability that was certain to accrue thereunder. We believe

that the lower court was right in finding, as a matter of law, that the misrepresentation was made with intent to deceive.

█ There is another reason underlying the judgment that is equally fatal to appellant's contention. The application contained the following provision:

"The proposed policy shall not take effect unless and until delivered to and received by the Insured, the Beneficiary or by the person who herein agrees to pay the premiums, during the Insured's continuance in good health and unless and until the first premium shall have been paid during the Insured's continuance in good health; except in case a conditional receipt shall have been issued as hereinafter provided."

Under the evidence in this case, considered most favorably for the appellant, the policy of insurance never became effective. When the policy was delivered to appellant on February 11, 1930, his physical condition had become manifest, even to the appellant himself. Not only did he know that his vision was impaired to such an extent that he was going blind, but he himself testified that he knew that he had syphilis when he began the course of treatment under Dr. Whitty. The treatments began before the policy was delivered. That the disease was the cause of the failing eyesight, there can be no doubt. Under the state of the evidence, there was nothing on which the verdict of the jury could be legally predicated. *Logan v. New York Life Ins. Co.*, 107 Wash. 253, 181 Pac. 906; *Guarascio v. Prudential Ins. Co. of America*, 110 Wash. 1, 187 Pac. 405.

█ The appellant contends that this latter question is not properly before us, because the judgment of the trial court does not specifically recite that the appellant was ill at the time the policy was delivered, nor that the policy, for that reason, did not become effective. Counsel's proposition is that the judgment

recited only one ground or reason for the court's decision, and that, since none other was specified, none other can be considered on this appeal. In advancing this proposition, counsel reasons by analogy from the rule pertaining to orders granting or denying new trial. With reference to such orders, the rule is now definitely settled in this state that, unless it appears on the face of the order that it was intended to be limited to a specific ground, it will not be considered that the ground stated is a limiting or exclusive one. In *Morehouse v. Everett,* 136 Wash. 112, 238 Pac. 897, we said on page 115:

"Any such *limitation* and *exclusiveness* of the court's ground for the granting or denial of a motion for new trial must appear in the formal final order disposing of the motion, before this court can so view the trial court's disposition of the motion." (Italics ours.)

The rule was approved in *Bone v. Yellow Cab Co.,* 137 Wash. 472, 242 Pac. 1093.

In the judgment and decree, the court not only found that there was an intention to deceive, but also that the motion for judgment notwithstanding the verdict was well taken. At the conclusion of the evidence, respondent had moved for a directed verdict on two grounds: (1) that an intention to deceive had been shown; and (2) that the policy had never become effective. The court overruled the motion, but at the same time stated that it would be considered on a motion for judgment notwithstanding the verdict. The latter motion was subsequently sustained, the judgment reciting that it had been well taken. The formal judgment, therefore, does not indicate that the basis of the court's ruling was limited to a sole and exclusive ground; rather does it indicate a dual reason.

The judgment is affirmed.

TOLMAN, C. J., MAIN, and BEALS, JJ., concur.