[No. 30156. Department Two. July 3, 1947.]

NAN W. KAY, *Appellant,* v. OCCIDENTAL LIFE INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 183 P. (2d) 181.

*Samuel L. Crippen,* for appellant.

*Metzger, Blair, Gardner & Boldt,* for respondent.

HILL, J.—Only one question is here presented: Was there any credible evidence from which a jury could have determined that certain false representations or warranties in the application for a policy of life insurance were made without intent to deceive? The trial court answered no and took the case from the jury.

The falsity of certain representations is conceded, but it is appellant's position that a jury could find from the evidence that they were not made with intent to deceive.

We have a statute which provides:

"Warranty not to avoid policy unless deceptive. No oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance, by the assured or in his behalf, shall be deemed material or defeat or avoid the policy or prevent it attaching, unless such misrepresentation or warranty is made with the intent to deceive. . . ." Rem. Rev. Stat., § 7078 [P.P.C. § 645-11].

 Liability on an insurance policy cannot be avoided unless it appears that untrue representations were knowingly made in the application for the policy and that, in making those representations, the applicant had an intent to deceive the company. *Houston v. New York Life Ins. Co.,* 159 Wash. 162, 292 Pac. 445, 166 Wash. 611, 8 P. (2d) 434;

*Great Northern Life Ins. Co. v. Johnson,* 187 Wash. 347, 60 P. (2d) 109; *Miller v. United Pac. Cas. Ins. Co.,* 187 Wash. 629, 60 P. (2d) 714.

However, where a false statement has been knowingly made, there is a presumption that it was made with intent to deceive. *Quinn v. Mutual Life Ins. Co.,* 91 Wash. 543, 158 Pac. 82; *Day v. St. Paul Fire & Marine Ins. Co.,* 111 Wash. 49, 189 Pac. 95; *Equitable Life Ins. Co. v. Carver,* 17 F. Supp. 23.

■■ We have frequently held that a presumption is not evidence (*Gardner v. Seymour,* 27 Wn. (2d) 802, 180 P. (2d) 564); and, when we have said that the presumption must be overcome by evidence establishing an honest motive or an innocent intent, as was said in *Day v. St. Paul Fire & Marine Ins. Co., supra,* and *Hayes v. Automobile Ins. Exch.,* 126 Wash. 487, 218 Pac. 252, we meant only that the burden of going forward with the evidence is upon the assured or the beneficiary seeking to enforce the policy. The bare affirmation that there was no intent to deceive is not credible evidence of good faith, and, in the absence of credible evidence of good faith, the presumption would warrant a dismissal. *Day v. St. Paul Fire & Marine Ins. Co., supra.* As was said in *Mutual Life Ins. Co. v. Campbell,* 170 Wash. 485, 16 P. (2d) 836:

"It profits him nothing to say that he did not by his representations intend to deceive. A statement that is obviously factitious cannot be accepted as being true on its face."

■ If, however, there is credible evidence from which the trier of the facts could conclude that the misrepresentations were made without intent to deceive the insurance company, the burden is upon the insurance company to prove that there was a fraudulent intent to deceive it on the part of the assured. *Equitable Life Assur. Soc. v. MacDonald,* 96 F. (2d) 437.

In the case just cited, Judge Denman, speaking for the ninth circuit court of appeals, said:

"There being such evidence of innocence, the question then is: 'What is the law of Washington with regard to the

*burden of proof* when the insurance company has proved the insured's knowingly having made the false and fraudulent representations?' The Washington Supreme Court holds that it raises a presumption, which it describes as follows: 'The proof of making of false and fraudulent representations raises a presumption of dishonest motive which must be overcome by evidence establishing an honest motive.'

*"Great Northern Life Ins. Co. v. Johnson, supra,* 187 Wash. 347, 60 P. 2d 109, 112.

"Under the Washington law a presumption is not evidence and does not shift the burden of proof, but merely shifts to the party against which it exists the duty of going forward with the evidence. The presumption here disappears when there is evidence on the subject which, in its [sic] absence of the presumption, would warrant the inference of an innocent intent.

"In *Anning v. Rothschild & Co.,* 130 Wash. 232, 235, 226 P. 1013, 1014, the Supreme Court of Washington says:

" 'In *Scarpelli v. Washington Water Power Co.,* 63 Wash. 18, 114 P. 870, we quoted and adopted the following from the language of the Supreme Court of South Dakota (*Peters v. Lohr,* 24 S. D. 605, 124 N. W. 853):

" ' "A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until prima facie evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. The presumption, when the opposite party has produced prima facie evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponents' prima facie evidence with evidence, and not presumptions. A presumption is not evidence of a fact, but purely a conclusion. Elliott, Ev. §§ 91, 92, 93; Wigmore, Ev. §§ 2490, 2491." ' "

To the same effect and relying on the same authorities, see *Gardner v. Seymour, supra.*

And in another ninth circuit court case construing our statute, Judge Garrecht said:

"Ordinarily, the intent to deceive in misrepresenting past illnesses is a question for the jury." *Prudential Ins. Co. v. Winn,* 71 F. (2d) 126, 135.

Having in mind the rules of law applicable to a case of this character, we turn now to a consideration of the facts, which are substantially undisputed. In September, 1943, George C. Kay, a foreign-born Chinese, applied to the Prudential Insurance Company of America for a ten-thousand-dollar policy and was, after physical examination, rejected by that company, no reason being given. Thereafter, on April 5, 1944, he was contacted by a representative of the Occidental Life Insurance Company, the respondent here, and, after some discussion, made application for a twenty-year-endowment policy in the amount of ten thousand dollars. He disclosed the rejection by the Prudential company the previous year and was subjected to three or four examinations (the first one on April 11, 1944) before his application was accepted. He died June 12, 1945, and, proof of loss having been made by the beneficiary, his wife, the appellant here, payment was refused by the respondent except as to the amount of the premiums paid. She then brought this action to recover on the policy.

Respondent, in its brief, listed seven questions which it contends were answered falsely in the application, as follows:

"(1) (Par. 11-f [of part II of the application]) 'Have you ever had any of the following: or have you ever consulted a physician or practitioner, or received any treatment for any of the following: . . . Ulcer of the Stomach or Bowels?'

"ANSWER: 'No.'

"(2) (Par. 15) 'Have you, in the past at any time, consulted a physician or practitioner not named (otherwise in the application) regarding yourself?'

"ANSWER: 'Dr. Fairborn, Tacoma, Bronchitis, 1942.'

"(3) (Par. 18) 'Have you ever undergone any special tests or treatments, such as . . . X-Ray?'

"ANSWER: 'Not that is sure of.'

"(4) (Par. 14) 'Have you now, or have you ever had any illness, disease, deformity, accident or injury other than listed (in the application)?'

"ANSWER: 'Thinks had "all" childhood disease.'

"(5) (Par. 19) 'Within the last five years have you ever been advised to restrict your diet?'

"ANSWER: 'No.'

"(6) (Par. 5) 'Has your weight increased or decreased in the past twelve months?'

"ANSWER: 'Thinks has gained slightly.'

"(7) (Par. 23) 'Are you aware of any circumstances connected with your own health or that of your family which might affect the risk of an insurance on your life?'

"ANSWER: 'No.' "

The answers to all the questions on the application were written by the insurance company's examining physician, Dr. Weldon Pascoe. The application was signed by Mr. Kay, and the written and signed application was made a part of the policy, with a photostatic copy incorporated therein.

■ Three of these claimed false representations may be quickly disposed of. (1) We do not believe that it was established that Mr. Kay had been advised to restrict his diet within the five years preceding the application. (2) Neither is it established that his representation about his weight was false. At the time of the application to the Prudential company, in September, 1943, he weighed 124 pounds; in April, 1944, when he made his application to respondent, he weighed 119 pounds. There is no evidence as to his weight in April, 1943, and the fact that he lost five pounds between September, 1943, and April, 1944, does not establish that he answered falsely when he said that he thought he had gained slightly during the past twelve months. It is also to be noted that the information concerning Mr. Kay's weight of 124 pounds, as given in the Prudential application, was known or could have been known to the respondent, before it issued the policy. (3) The seventh and last of the claimed misrepresentations is not susceptible of proof except by inference, and that is the very issue which the court or jury must determine; *i.e.*, whether Mr. Kay intended to deceive the insurance company.

The other four questions and answers merit consideration here. Mr. Kay did have a duodenal ulcer in 1937, which fact made his answers to questions Nos. 1 and 4 false; he had consulted three physicians not named in the application in connection with the treatment of that ulcer, which made his answer to question No. 2 false; in connection with

their treatment for the ulcer, he had undergone X-ray examinations on two occasions and, on at least one occasion, a fluoroscopic examination, so that we will regard his answer to question No. 3 as false, although his answer was qualified and not categorical.

The answers to these four questions being false, the question for determination then becomes whether they were made with intent to deceive. The jury could have found the following state of facts: While living in Portland, Oregon, Mr. Kay was sent to Dr. William S. Knox, probably by a Chinese doctor named Lum, and on November 30, 1937, he was X-rayed and fluoroscoped and found to have a duodenal ulcer. He was placed on a "bland" or "soft" diet for six weeks, which required him to eat once an hour during eight hours of the day. Thereafter, for six months, he was on a modified diet, and the intervals between feedings were lengthened. He continued to consult Dr. Knox until May 9, 1939, but the doctor stated that he had long since ceased to have any symptoms of ulcer, and that his recovery from the ulcer was completed some six months after the treatment began. This was verified by an examination by Dr. Clarence Smith, of Portland.

On June 17, 1938, Mr. Kay consulted Dr. Smith. He told Dr. Smith that he had treated with Dr. Knox and Dr. Lum during the preceding year for an ulcer in the duodenum, but he was then complaining of pain in the upper epigastrum, which had been present for two days. X-ray photographs were taken on June 24, 1938, and, from the study of the X rays, Dr. Smith concluded that the ulcer was completely healed and so advised Mr. Kay, but told him that he did not feel his condition would remain satisfactory unless he would stay on a diet. He diagnosed Mr. Kay's ailment tentatively, at that time, as pyloric spasm. He did not see Mr. Kay after June 27, 1938.

After the treatment by Dr. Knox had resulted in the healing of the ulcer, there was never, so far as the record shows, any recurrence of that condition. Mr. Kay did not continue to diet, and he ate the same things as did other members of his family.

The Kays moved to Tacoma, Washington, in December, 1941, and conducted a restaurant business there. Mr. Kay did not mention the ulcer when he went to Dr. Edward J. Fairborn, in Tacoma, in September of 1942, for a condition which was diagnosed as bronchitis. X rays were taken at that time, but only of the lungs. Mr. Kay reported this visit to Dr. Fairborn in his applications for insurance. He made no mention of the fact that he had had an ulcer in his application to either the Prudential Insurance Company or to the respondent.

Some months after his application to the respondent had been accepted and the policy of insurance issued, Mr. Kay consulted Dr. William B. McCreery, who was looking after Dr. Fairborn's practice while the latter was in the service, and again there apparently was no mention of any ulcer. Dr. McCreery, suspecting tuberculosis, sent Mr. Kay to the Laurel Beach sanatorium, near Seattle, and, while there, he was examined by Dr. Frederick Slyfield.

In discussing his condition with Dr. Slyfield, Mr. Kay made no mention of the ulcer. The fact that he previously had had an ulcer was brought out only when Dr. Slyfield began to make out what he called an "inventory by systems." As the doctor said, "He never mentioned it until we dug it out, going over all possible symptoms in the past." Dr. Slyfield testified, also, that, as a result of his questioning,

"We elicited the following information; he said he had medical treatment for ulcer of the stomach in 1937, with apparently good result. He had his appendix out in 1935 and he spoke of having had bronchitis for three weeks in 1943. . . . He felt that he knew he had had something wrong in the stomach; he had had medical treatment, as he says, as opposed to surgical and apparently complete recovery."

Asked if there was anything further done with respect to the ulcerous condition, Dr. Slyfield testified that there was not, saying:

"Not only because it was unrelated because there was no symptom, no complaint. That was past history, ancient

history, gone and forgotten. There was no occasion to check up on it."

Mr. Kay was discharged from the sanatorium in early April, 1945, sufficiently improved to do light work. Another illness started in May, 1945. When he was hospitalized for that illness, which culminated in his death on June 12, 1945, he reported the previous ulcer to Dr. Edward Wolfe.

The cause of death must be regarded as immaterial. While reference is made in the death certificate to liver cancer, the certificate was introduced to prove the fact of death, and not as evidence of the cause of death. In response to a question on the oral argument, counsel for respondent seemed to suggest that a recurrence of the ulcer might have been a contributory cause of death. When the appellant sought to introduce evidence negativing that hypothesis, respondent objected very strenuously and successfully that the cause of death was immaterial. It cannot change its position here.

Appellant further points, as evidence of Mr. Kay's good faith here, to the following facts: (a) He was not seeking insurance: the agents of respondent were endeavoring to sell it to him; (b) he disclosed his rejection by the Prudential Insurance Company in the preceding September; (c) he did not take the type of insurance that would pay the most in benefits for the lowest premiums, but elected an "investment" policy, a twenty-year endowment carrying a relatively high premium rate; (d) he did not accept the policy when it was first offered to him but delayed for two weeks before finally deciding to take it.

Character witnesses testified to Mr. Kay's reputation for truth and veracity, and that he was frank, honest, and straightforward.

We come now to a consideration of the application of the law, as we have found it to be, to the facts as they might have been found to be, in the light of the cases heretofore decided.

Cases construing our statute relied upon by the respondent are readily distinguishable. In every case involving life

or disability insurance in which this court held that the policy could be avoided or canceled by reason of misrepresentations, the applicant had concealed the existence of a disease from which he was suffering at the time he signed the application, òr for which he was then receiving treatment or had received treatment within the preceding month. In *Walker v. Metropolitan Life Ins. Co.,* 132 Wash. 615, 232 Pac. 694, and in *Mutual Life Ins. Co. v. Campbell,* 170 Wash. 485, 16 P. (2d) 836, the applications for insurance were made a few days after diagnoses of cancer (the *Walker* case) and inevitable blindness (the *Campbell* case). It would take, as the court said in the latter case, an "overweening credulity" to accept Campbell's statement that he did not know that he had the disease of syphilis when he signed the application, but

" . . . still the uncontradicted fact stands admitted by him that he knew, before he signed the application, that his vision was then seriously impaired, and that he was then told by an eye specialist that he was going blind."

In *Paulson v. Montana Life Ins. Co.,* 181 Wash. 526, 43 P. (2d) 971, and *Great Northern Life Ins. Co. v. Johnson,* 187 Wash. 347, 60 P. (2d) 109, the applicants had been and still were taking treatment when the applications were made, in the former case for diabetes, and in the latter for goiter.

In *Quinn v. Mutual Life Ins. Co.,* 91 Wash. 543, 158 Pac. 82, the applicant had been treated for syphilis on March 16th and 18th, and the following month, on the nineteenth of April, to be exact, made his application for insurance, stating that he was in good health and denying that he had had any illness or disease since childhood. As strong as this case is, it has been distinguished several times on the basis that it was a case tried by the court. *Brigham v. Mutual Life Ins. Co.,* 95 Wash. 196, 163 Pac. 380; *Day v. St. Paul Fire & Marine Ins. Co.,* 111 Wash. 49, 189 Pac. 95; *Prudential Ins. Co. v. Winn,* 71 F. (2d) 126, 135. In the case last cited, it is said:

"In the case of *Quinn v. Mutual Life Ins. Co.,* 91 Wash. 543, 158 P. 82, the applicant for a life insurance policy, as an

inducement to its issuance, stated in his application that he had had no diseases since childhood; that he was in good health and had not consulted a physician in the last five years, when, in fact, he was suffering from syphilis and had received medical treatment therefor from a physician less than a month prior to the date of his application for a policy. The lower court found that these representations were made by the applicant without intent to deceive, within the meaning of the statute of the state of Washington heretofore quoted [Rem. Comp. Stat., § 7078]. That case was tried without a jury. Upon appeal the Supreme Court reviewed the facts and determined that the representations could not have been made without an intent to deceive, and therefore canceled the policy. It will be noted that the Quinn Case was tried without a jury, and under the laws of the state of Washington, the Supreme Court reviews the facts as on a trial de novo. Ballinger's Code, § 6520; *Allen v. Swerdfiger,* 14 Wash. 461, 44 P. 894."

Respondent cites two Federal life and disability insurance cases construing Rem. Rev. Stat., § 7078: namely, *Equitable Life Ins. Co. v. Carver,* 17 F. Supp. 23, and *Equitable Life Assur. Soc. v. MacDonald,* 96 F. (2d) 437; and with both of these cases we are in entire accord. The former was an action to cancel certain insurance policies tried to the court, and Judge Neterer, as the trier of the facts, determined that there was an intention to deceive, which finding was abundantly established by the evidence. The second case has already been quoted from extensively in this opinion and is an authority for the appellant.

Respondent also relies on certain fire and automobile insurance cases: namely, *Day v. St. Paul Fire & Marine Ins. Co., supra; Hayes v. Automobile Ins. Exch.,* 126 Wash. 487, 218 Pac. 252; *Perry v. Continental Ins. Co.,* 178 Wash. 24, 33 P. (2d) 661; *McCann v. Reeder,* 178 Wash. 126, 34 P. (2d) 461. In all of these cases, the applicants denied having had previous fires or accidents, or stated that cars were new when they were in fact secondhand. In none of these cases, save the *Perry* case, was any excuse offered except the statement that there was no intent to deceive.

We are here dealing with an entirely different situation, where the misrepresentation concerns an ailment sup-

posedly cured six years before the application was made. As this court said in *McCann v. Reeder, supra,* in distinguishing the case of *Houston v. New York Life Ins. Co.,* 159 Wash. 162, 292 Pac. 445, 166 Wash. 611, 8 P. (2d) 434:

"The court held that it was not in the contemplation of the parties that the assured should disclose in his answers each and every time that he had consulted a physician, and that it was a question of fact for the jury to determine whether the particular ailment was a serious disease, and whether or not the applicant so considered it when he answered the question in the application."

We have held many times, in life and disability insurance cases, that the question of intent to deceive was one for the jury. *Brigham v. Mutual Life Ins. Co., supra; Goertz v. Continental Life Ins. & Inv. Co.,* 95 Wash. 358, 163 Pac. 938; *Askey v. New York Life Ins. Co.,* 102 Wash. 27, 172 Pac. 887, L. R. A. 1918F, 267; *Eaton v. National Cas. Co.,* 122 Wash. 477, 210 Pac. 779; *Houston v. New York Life Ins. Co., supra; Tison v. American Nat. Ins. Co.,* 163 Wash. 522, 1 P. (2d) 859, 3 P. (2d) 998; *Kearney v. Washington Nat. Ins. Co.,* 184 Wash. 579, 52 P. (2d) 903.

The case of *Houston v. New York Life Ins. Co., supra,* comes much closer than any other cited to paralleling the facts in the instant case. In fact, we have here a much stronger case for a jury than was made in that case. Mr. Houston had consulted Dr. Beeson in Ketchikan, Alaska, on September 6, 1927, complaining of pain and tenderness of about ten days' duration, around the appendix. The doctor made a diagnosis of subacute appendicitis and advised an operation. However, no operation was had at that time. Mr. Houston returned to this state and, on October 18, 1927, applied for reinstatement of a policy of life insurance which had lapsed. When asked if he had consulted with or been treated by a physician in the previous twenty-four months, he answered, "April 1, 1927, one week with grippe. Dr. Ellis, Ketchikan." On November 14, 1927, a successful appendectomy was performed. On November 27, 1928, Houston died of a disease of the heart. After the insurance company had refused payment, the beneficiary named in the reinstated life insurance policy started suit to recover thereon. The

jury rendered a verdict in favor of the plaintiff, and thereafter the trial court entered judgment in favor of the defendant notwithstanding the verdict of the jury. The trial court was reversed. The question for determination was stated to be:

"Is the evidence introduced upon the trial so conclusive of Houston's intent to deceive the company by his above quoted answers in his application, as to call for the court so deciding as a matter of law, instead of leaving that question for decision by the jury?"

In answering the question, the court said:

"We have held in our decisions rendered since the enactment of that provision [Rem. Comp. Stat., § 7078] in 1911 that 'it is not enough under this statute to find that the representations were false; it must further be found that they were made with intent to deceive,' before the beneficiary's right to recovery upon the policy can be defeated or avoided by the insurer."

When the case was sent back to the trial court, a motion for a new trial was denied and judgment was entered on the verdict. A second appeal followed (*Houston v. New York Life Ins. Co.*, 166 Wash. 611, 8 P. (2d) 434), in which Judge Millard, speaking for the court, made an exhaustive resume of the opinions making clear that it is the applicant's state of mind that is determinative of the question of whether the answers in such an application are made in good faith or with an intent to deceive.

While the brief and oral argument of respondent might be quite persuasive were we sitting as jurors, we feel that it should be directed to a jury, because, when we consider, with all the other circumstances in this case, that Mr. Kay was advised by two doctors some five or six years before he signed the application here in question that his ulcer had completely healed, we cannot hold that reasonable minds could not differ on the question of whether his answers were made with the intention of deceiving the insurance company.

The judgment of dismissal is reversed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.